## SPROLES ET AL. *v.* BINFORD, SHERIFF, ET AL.

No. 826.   Argued April 27, 28, 1932.—Decided May 23, 1932.

*Messrs. Charles I. Francis, Frank H. Rawlings,* and *LaRue Brown,* with whom *Mr. J. B. Dudley* was on the brief, for appellants.

378

*Messrs. John H. Crooker* and *R. C. Fulbright* filed a brief on behalf of W. T. Stevens, intervener-appellant.

*Messrs. LaRue Brown* and *Charles I. Francis* filed a brief on behalf of the Tennessee Dairies, Inc., intervener-appellant.

*Mr. Elbert Hooper,* Assistant Attorney General of Texas, with whom *Messrs. James V. Allred,* Attorney General, *T. S. Christopher,* Assistant Attorney General, *J. H. Tallichet, W. M. Streetman,* and *A. L. Reed* were on the brief, for appellees.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The District Court, composed of three judges, entered a final decree dismissing the bill of complaint which sought to restrain the enforcement of the Motor Vehicle

Act of Texas, House Bill No. 336, Chapter 282, 42d Texas Legislature. 56 F. (2d) 189. The decree was entered on pleadings and proofs, and the complainants and interveners appeal. The Act was assailed upon the ground that certain of its provisions violate the due process and equal protection clauses of the Fourteenth Amendment, and also the commerce and contract clauses (Art. I, § 8, par. 3; § 10, par. 1) of the Federal Constitution. The statute is an amendatory act and the provisions in question are found in §§ 2, 3, 5 and 7.

Section 2[1] prohibits the operation on any highway of any "vehicle" as defined, exceeding stated limitations of size, or any vehicle not constructed or equipped as required, and also the transportation of any load exceeding the dimensions and weights prescribed. The State Highway Department may grant permits, for ninety days, for the transportation "of such overweight or oversize or overlength commodities as can not be reasonably dismantled," or for the operation "of super-heavy and oversize equipment" for the transportation of such commodities, provided that hauls under these permits shall be made "by the shortest practicable route."

---

[1] "Section 2. It shall be unlawful and constitute a misdemeanor for any person to drive, operate or move, or for the owner to cause or permit to be driven, operated, or moved on any highway, any vehicle or vehicles of a size or weight exceeding the limitations stated in this act or any vehicle or vehicles which are not constructed or equipped as required in this act, or to transport thereon any load or loads exceeding the dimensions or weight prescribed in this act; provided the Department, acting directly or through its agent or agents designated in each county shall have and is hereby granted authority to grant permits limited to periods of ninety (90) days or less for the transportation over State highways of such overweight or oversize or overlength commodities as cannot be reasonably dismantled or for the operation over State highways of super-heavy and oversize equipment for the transportation of such oversize or overweight or overlength commodities as cannot be reasonably dis-

Section 3 [2] limits the width of a vehicle, including load, to 96 inches, the height to 12½ feet, the length to 35 feet, and the length of a combination of vehicles, coupled together, to 45 feet. It forbids the transportation as a load, or as part of a load, of any commodity in containers having more than 30 cubic feet and weighing more than 500 pounds, where there are more than 14 of such containers carried as a load on " any such vehicle or com-

---

mantled; provided, that any haul or hauls made under such permits shall be made by the shortest practicable route; . . ."

[2] " Section 3. (a) No vehicle shall exceed a total outside width, including any load thereon, of ninety-six (96) inches, except that the width of a farm tractor shall not exceed nine (9) feet, and except further, that the limitations as to size of vehicle stated in this section shall not apply to implements of husbandry, including machinery used solely for the purpose of drilling water wells, and highway building and maintenance machinery temporarily propelled or moved upon the public highways.

"(b) No vehicle unladen or with load shall exceed a height of twelve feet six inches (12' 6"), including load.

"(c) No motor vehicle, commercial motor vehicle, truck-tractor, trailer, or semi-trailer shall exceed a length of thirty-five (35) feet, and no combination of such vehicles coupled together shall exceed a total length of forty-five (45) feet, unless such vehicle or combination of vehicles is operated exclusively within the limits of an incorporated city or town.

"(d) No train or combination of vehicles or vehicle operated alone shall carry any load extending more than three (3) feet beyond the front thereof, nor, except as hereinbefore provided, more than four (4) feet beyond the rear thereof.

"(e) No passenger vehicle shall carry any load extending more than three (3) inches beyond the line of the fenders on the left side of such vehicle, nor extending more than six (6) inches beyond the line of the fenders on the right side thereof; provided, that the total over-all width of such passenger vehicle shall in no event exceed ninety-six (96) inches, including any and all such load.

"(f) Immediately upon the taking effect of this act, it shall thereafter be unlawful for any person to operate or move, or for any owner to cause to be operated or moved, any motor vehicle or combination thereof over the highways of this State which shall have as

bination," no load of any such containers to be carried in excess of 7,000 pounds. There are exempted from the limitation as to size "implements of husbandry, including machinery used solely for the purpose of drilling water wells, and highway building and maintenance machinery temporarily propelled or moved upon the public highways."

Section 5 [3] prohibits any "commercial motor vehicle" (which the Act defines as one designed or used for the transportation of property), truck-tractor, or trailer from operating outside of an incorporated city or town with a load exceeding 7,000 pounds " on any such vehicle or train or combination of vehicles," and provides further that no motor vehicle (which includes passenger buses) shall operate outside a city or town with a greater weight than 600 pounds " per inch width of tire upon any wheel concentrated upon the surface of the highway."

---

a load or as a part of the load thereon any product, commodity, goods, wares or merchandise which is contained, boxed or bound in any container, box or binding containing more than thirty (30) cubic feet and weighing more than five hundred (500) pounds where there are more than fourteen (14) of such containers, boxes or bindings being carried as a load on any such vehicle or combination thereof; provided, that no number of any such containers, boxes or bindings shall be carried as the whole or part of any load exceeding seven thousand (7000) pounds on any such vehicle or combination thereof; . . ."

[3] " Section 5. No commercial motor vehicle, truck-tractor, trailer, or semi-trailer shall be operated on the public highway outside of the limits of an incorporated city or town with a load exceeding seven thousand (7000) pounds on any such vehicle or train or combination of vehicles; and no motor vehicle, commercial motor vehicle, truck-tractor, trailer or semi-trailer having a greater weight than six hundred (600) pounds per inch width of tire upon any wheel concentrated upon the surface of the highway shall be operated on the public highways outside of the limits of an incorporated city or town; provided, however, that the provisions of this section shall not become effective until the first day of January, 1932."

Section 7[4] inserts a paragraph to be known as § 5 (b) of the amended statute, providing that the foregoing limitations as to length of vehicle or combination of vehicles and weight of loads, and height of vehicle with load, shall not apply to vehicles " when used only to transport property from point of origin to the nearest practicable common carrier receiving or loading point or from a common carrier unloading point by way of the shortest practicable route to destination, provided said vehicle does not pass a delivery or receiving point of a common carrier equipped to transport such load," or when used to transport property " from point of origin to point of destination " when the latter is less distant from the point of origin " than the nearest practicable common carrier receiving or loading point equipped to transport such load." This provision is subject to the limitation that, except by special permit, as provided in the Act, the length of such vehicles shall not exceed 55 feet, or the weight of such loads 14,000 pounds, and also that the requirement as to the " weight per inch width of tire " shall still be applicable.

The District Court made comprehensive findings. These set forth the various interests of the complainant and interveners (common carriers and contract carriers, in intrastate and interstate commerce, and manufacturers and distributors of commodities), their large investments, the extent of their operations in highway transportation, the character and uses of their equipment, and the losses

---

[4] " Section 7. That Section 5 of said chapter be and the same is hereby further amended by adding thereto a new section to be known as Section 5 (b), which shall hereafter read as follows:

" Section 5 (b). The limitations imposed by this act as to length of vehicle or combination of vehicles and weight of loads and of height of vehicle with load shall not apply to vehicles when used only to transport property from point of origin to the nearest prac-

to which they would be subjected by requirements of the statute. Other findings may be summarized as follows:

Of all the registered vehicles on the highways, including trucks, buses and automobiles, less than four-tenths of one per cent. have a rated carrying capacity of more than 7,000 pounds; not more that 5,500 trucks, out of a total of 206,000, have such a capacity and are affected by the prescribed load limit. There are approximately 200,000 miles of state and county highways in Texas and less than 20,000 miles of these are State Designated Highways, the improvement of which represents a public investment of more than $250,000,000. The annual maintenance cost of State Designated Highways for the past three years averaged $12,000,000, and that of the more than 180,000 miles of county highways "is many millions of dollars annually." In enacting the statute, " the Legislature of Texas found as a fact that 7,000 pounds load weight, plus the weight of the vehicle, is the maximum load that should be allowed to pass over the Texas highways, taking into consideration the manner of past and present construction, probable future construction, cost of maintenance, strength of bridges, condition of traffic, etc.," and this finding of the Legislature is supported by the preponderance of the evidence before the court.

---

ticable common carrier receiving or loading point or from a common carrier unloading point by way of the shortest practicable route to destination; provided, said vehicle does not pass a delivery or receiving point of a common carrier equipped to transport such load, or when used to transport property from the point of origin to point of destination thereof when the destination of such property is less distant from the point of origin thereof than the nearest practicable common carrier receiving or loading point equipped to transport such load; provided, however, that in no event except by special permit, as hereinabove specifically provided, shall the length of said vehicles exceed fifty-five (55) feet or the weight of such loads exceed fourteen thousand (14,000) pounds; and provided further, that the limitations imposed by this act upon weight per inch width of tire shall apply to all such vehicles and loads; . . ."

There are highways of concrete and other rigid and semi-rigid types of construction, and also bridges, capable of carrying a greater load than 7,000 pounds, but these do not form a regularly connected system and are scattered throughout the State. There are all types of roads, " ranging from dirt, gravel, shell, asphalt and bitulithic to concrete and brick highways " of varying degrees of strength; the operations of complainant and interveners, and others similarly circumstanced, are conducted over all these types of highways, and bridges, except in some instances where operations may be over a regular route. The statute was enacted in the interest of the whole State, and the State highway system in particular, and the operations of complainant and interveners constitute a very small portion of the traffic which the highways bear.

The number of trucks in use in Texas has increased 300 per cent. in the last six years; official registrations show an increase from 65,536 in 1924 to 206,527 in 1930, not including the large increase in interstate truck traffic; and this increase in " truck density " justifies the dimensional and weight restrictions of the statute in the interest of public safety and convenience and highway protection. In 1930, there were only 900 passenger buses operating over the Texas highways, representing less than .004 of one per cent. of the total number of vehicles; these passenger buses, while similar in many respects in construction to trucks carrying freight, are specially equipped to haul passengers, operate under regulations of the railroad commission and under conditions wholly different from those of trucks; that the difference between these two types of vehicles and the number of each type, and in their operation, is ample justification for legislative classification. Excessive loads on trucks are damaging the highways and the limitation of the net load to 7,000 pounds will cause a saving to the State in maintenance costs. Heavily loaded trucks cause accidents and reduced loads will result in greater safety.

On account of the width of traffic lanes, vehicles of greater width or length than that prescribed by the statute are hazardous for passing traffic, and the hazard will be materially reduced by a lighter load and a lesser width and length. There are low underpasses and bridge portals in Texas making necessary the prescribed height limit of 12½ feet; a low center of gravity makes a truck less likely " to topple over or spill on the highway," and for that reason less dangerous.

In order to carry on the business of farming, " implements of husbandry, plows, threshing machines, hay pressers, etc." must be moved from one place to another. The same is true of machinery for water-well drilling and highway construction. The uses of the highways for this sort of transportation are temporary only and essential to the public welfare.

The average distance traveled by trucks carrying property from points of origin to common carrier receiving points, or from common carrier unloading points to destination, is from four to eight miles; these hauls are universally short. Such operations are confined to small areas and greatly reduce the danger of traffic congestion or highway injury incident to truck transportation. Those persons coming under the exception permitted by § 5 (b) of the Act transport under distinctly different circumstances from complainant and interveners, who transport over fixed routes, and from other persons using the highways. This exception will have the effect of diverting from the highways generally a great deal of traffic and thus reduce congestion and danger.

There are a large number of commodities " such as boilers, transformers, telephone poles, etc,, as [sic] cannot be reasonably dismantled " and which it is necessary to transport. The State Highway Commission in the performance of its duty of issuing special permits under § 2

acts as an administrative, fact-finding body and under a prescribed standard.

Upon the facts found, the District Court concluded that the requirements of the statute, aside from § 3, subdivision (f), if independently considered, were reasonable and within the constitutional authority of the State.

The intervener W. T. Stevens, who is engaged in hauling uncompressed cotton, specifically complained of § 3, subdivision (f) as creating an arbitrary and unconstitutional discrimination against him, and the District Court made separate findings upon this point. The court found that the customary square bale of uncompressed cotton is of a greater size than 30 cubic feet and that the average " square bale of uncompressed cotton, when compressed to a standard density, is less than 30 cubic feet in size "; and that the average square bale of cotton whether uncompressed or compressed, weighs approximately 500 pounds or more. There is the further finding that there is no commodity commonly transported over the highways of Texas which conforms to the description—" contained, boxed or bound in any container, box or binding, containing more than 30 cubic feet and weighing more that 500 pounds "—other than square bales of uncompressed cotton. The court held that the limitation of the load to " fourteen packages, boxes, barrels or bales " exceeding the dimensions stated in § 3, subdivision (f), was reasonable and valid when construed in connection with the provision of § 5 (which became effective January 1, 1932) limiting loads to 7,000 pounds, and expressed the opinion that 14,000 pounds of uncompressed cotton may be transported under the provisions of § 7 (§ 5b). But the court also held that if § 3 subdivision (f), is construed independently of the provisions of § 5, the former " has no relation to the supposed mischiefs to be remedied and is unreasonable and unlawfully discriminatory " in its application to the intervener Stevens.

As the findings of the District Court, so far as they deal with matters of fact, are supported by the evidence, we pass to the consideration of the questions of law raised by appellants' contentions.

*First.* The limitation, by § 5,[5] of the net load on trucks to 7,000 pounds is attacked as an arbitrary regulation depriving appellants of their property without due process of law. Appellants urge that this provision repeals the former law which was properly designed to protect the highways and that the drastic requirement of the amendment is opposed to sound engineering opinion; that when gross weight is restricted by the 600 pounds per inch of tire spread upon the highway there is left a sufficient margin to carry greater cargoes than 7,000 pounds without causing damage; and that damage from overweight can be prevented only by regulations which fix a maximum gross load and provide for its proper distribution through axles and wheels to the highway surface.

In exercising its authority over its highways the State is not limited to the raising of revenue for maintenance and reconstruction, or to regulations as to the manner in which vehicles shall be operated, but the State may also prevent the wear and hazards due to excessive size of vehicles and weight of load. Limitations of size and weight are manifestly subjects within the broad range of legislative discretion. To make scientific precision a criterion of constitutional power would be to subject the State to an intolerable supervision hostile to the basic principles of our Government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to secure. *Ohio Oil Co.* v. *Conway,* 281 U. S. 146, 159. When the subject lies within the police power of the State, debatable questions as to reasonableness are not for the courts but for the legislature,

---

[5] See Note 3.

which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome. *Standard Oil Co.* v. *Marysville,* 279 U. S. 582, 586; *Price* v. *Illinois,* 238 U. S. 446, 452, 453; *Hadacheck* v. *Los Angeles,* 239 U. S. 394, 410; *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365, 388; *Zahn* v. *Board of Public Works,* 274 U. S. 325, 328. Applying this principle, this Court in *Morris* v. *Duby,* 274 U. S. 135, sustained the regulation of the Highway Commission of Oregon, imposed under legislative authority, which reduced the combined maximum weight in the case of motor trucks from 22,000 pounds, which had been allowed under prior regulations, to 16,500 pounds.[6] See, also, *Carley & Hamilton* v. *Snook,* 281 U. S. 66, 73. The requirement in *Morris* v. *Duby,* related to the gross load limit, but we know of no constitutional distinction which would make such legislation appropriate and deny to the State the authority to exercise its discretion in fixing a net load limit. We agree with the District Court that the limitation imposed by § 5 of the statute does not violate the due process clause.

*Second.* The objection to the prescribed limitation as repugnant to the commerce clause is also without merit. The Court, in *Morris* v. *Duby, supra,* at p. 143, answered a similar objection to the limitation of weight by the following statement, which is applicable here: "An examination of the acts of Congress discloses no provision, express or implied, by which there is withheld from the State its ordinary police power to conserve the highways

---

[6] In the instant case, there was evidence that the weight of an average motor truck would be about 11,000 pounds which, added to the 7,000 pounds allowed for net load, would make the limit of gross weight about 18,000 pounds. Other testimony was to the effect that a truck "usually weighs about the same as the net load," and upon this assumption it is said that the limit of gross weight would be 14,000 to 15,000 pounds.

in the interest of the public and to prescribe such reasonable regulations for their use as may be wise to prevent injury and damage to them. In the absence of national legislation especially covering the subject of interstate commerce, the State may rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens." In the instant case, there is no discrimination against interstate commerce and the regulations adopted by the State, assuming them to be otherwise valid, fall within the established principle that in matters admitting of diversity of treatment, according to the special requirements of local conditions, the States may act within their respective jurisdictions until Congress sees fit to act. *Minnesota Rate Cases,* 230 U. S. 352, 399, 400. As this principle maintains essential local authority to meet local needs, it follows that one State cannot establish standards which would derogate from the equal power of other States to make regulations of their own. See *Hendrick* v. *Maryland,* 235 U. S. 610, 622; *Kane* v. *New Jersey,* 242 U. S. 160, 167; *Michigan Commission* v. *Duke,* 266 U. S. 570, 576; *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245, 250, 251; *Sprout* v. *South Bend,* 277 U. S. 163, 169; *Continental Baking Co.* v. *Woodring,* ante, p. 352.

*Third.* The conclusion that the State had authority to impose the limitation of § 5 for the purpose of protecting its highways meets the contention based on the contract clause of the Federal Constitution. Contracts which relate to the use of the highways must be deemed to have been made in contemplation of the regulatory authority of the State. With respect to the power of Congress in the regulation of interstate commerce, this Court has had frequent occasion to observe that it is not fettered by the necessity of maintaining existing arrangements which

would conflict with the execution of its policy, as such a restriction would place the regulation of interstate-commerce in the hands of private individuals and withdraw from the control of Congress so much of the field as they might choose by prophetic discernment to bring within the range of their agreements. *Louisville & Nashville R. Co.* v. *Mottley,* 219 U. S. 467, 482; *Philadelphia, B. & W. R. Co.* v. *Schubert,* 224 U. S. 603, 613, 614; *New York Central & Hudson River R. Co.* v. *Gray,* 239 U. S. 583; *Continental Ins. Co.* v. *United States,* 259 U. S. 156, 171. The same principle applies to state regulations in the exercise of the police power. *Rast* v. *Van Deman & Lewis,* 240 U. S. 342, 363; *Union Dry Goods Co.* v. *Georgia Public Service Comm.,* 248 U. S. 372, 375, 376; *Producers Transportation Co.* v. *Railroad Comm.,* 251 U. S. 228, 232; *Sutter Butte Canal Co.* v. *Railroad Comm.,* 279 U. S. 125, 137, 138; *Morris* v. *Duby, supra.*

*Fourth.* We are thus brought to the questions raised with respect to the discriminatory provisions of §§ 3, 5 and 7 of the Act, which are assailed as denying to appellants the equal protection of the laws.

Section 3 (a)[7] provides that the limitations as to size of vehicle shall not apply to " implements of husbandry, including machinery used solely for the purpose of drilling water wells, and highway building and maintenance machinery temporarily propelled or moved upon the public highways." The District Court was of the opinion that the term " implements of husbandry " has reference to such implements as " tractors, plows, trucks, hay presses, etc." and that the use of the highways for this purpose, as well as for the movement of the described machinery, is but temporary. 56 F. (2d) at p. 190. Appellants urge that any implement, truck or vehicle used by a farmer is an " implement of husbandry," and hence, that under

[7] See Note 2.

this exception trucks used by farmers in connection with dairies or farms may be operated throughout Texas without any restriction as to size. We see no reason for attributing such a broad construction to the provision, if its validity can be saved by a narrower one, and we are informed that the Court of Criminal Appeals of Texas has held that the term "implement of husbandry" in this statute covers only farm machinery and not trucks used as an incident to the business of farming. *Reaves* v. *Texas,* 50 S. W. (2d) 286. Appellants also insist that the words "temporarily propelled or moved upon the public highways" apply only to "highway building and maintenance machinery" and not to "implements of husbandry." If the construction by the District Court of the term "implements of husbandry" is correct, it would follow that the movement would be relatively temporary and infrequent as compared with the ordinary uses of the highways by motor trucks. We think that the exception, in the light of the context and of its apparent purpose, instead of being arbitrary relieves the limitation of an application which otherwise might itself be considered to be unreasonable with respect to the exceptional movements described.

We do not find the provision of § 3 (c),[8] fixing approximately the same limit of length for individual motor vehicles and for a combination of such vehicles, to be open to objection. If the State saw fit in this way to discourage the use of such trains or combinations on its highways, we know of no constitutional reason why it should not do so.

Objection is made to § 7 (§ 5b)[9] permitting an additional length of vehicles and greater loads than 7,000

---

[8] See Note 2.
[9] See Note 4.

pounds (up to 14,000 pounds) when the vehicles are operated, as stated, between points of origin, or destination, and " common carrier receiving or loading," or unloading, points. Appellants urge that this provision, by reason of the use of the terms "nearest practicable common carrier receiving or loading point" and "shortest practicable route to destination," and "common carrier receiving or loading point equipped to transport such load," is so uncertain that it affords no standard of conduct that it is possible to know. We cannot agree with this view. The "common carrier receiving or loading points," and the unloading points, described, seem quite clearly to be points at which common carriers customarily receive shipments, of the sort that may be involved, for transportation, or points at which common carriers customarily unload such shipments. "Shortest practicable route" is not an expression too vague to be understood. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. *Waters-Pierce Oil Co.* v. *Texas* (*No. 1*), 212 U. S. 86, 109; *Nash* v. *United States,* 229 U. S. 373, 377; *Miller* v. *Strahl,* 239 U. S. 426, 434; *Omaechevarria* v. *Idaho,* 246 U. S. 343, 348; *Hygrade Provision Co.* v. *Sherman,* 266 U. S. 497, 502; *Bandini Co.* v. *Superior Court,* 284 U. S. 8, 18. The use of common experience as a glossary is necessary to meet the practical demands of legislation. In this instance, to insist upon carriage by the shortest *possible* route, without taking the practicability of the route into consideration, would be but an arbitrary requirement, and the expression of that which otherwise would necessarily be implied, in order to make the provision workable, does not destroy it.

If taken to be sufficiently definite, appellants deny that the exception is justified. The District Court found that it relates to hauls that are universally short, averaging

from four to eight miles, and that those who come within the exception transport under distinctly different circumstances from other persons using the highways. Appellants contest the latter statement and urge that the former ground is insufficient. But the legislature in making its classifications was entitled to consider frequency and character of use and to adapt its regulations to the classes of operations, which by reason of their extensive as well as constant use of the highways brought about the conditions making the regulations necessary. *Continental Baking Co.* v. *Woodring, supra.* It is said that the exception was designed to favor transportation by railroad as against transportation by motor trucks. If this was the motive of the legislature, it does not follow that the classification as made in this case would be invalid. The State has a vital interest in the appropriate utilization of the railroads which serve its people, as well as in the proper maintenance of its highways as safe and convenient facilities. The State provides its highways and pays for their upkeep. Its people make railroad transportation possible by the payment of transportation charges. It cannot be said that the State is powerless to protect its highways from being subjected to excessive burdens when other means of transportation are available. The use of highways for truck transportation has its manifest convenience, but we perceive no constitutional ground for denying to the State the right to foster a fair distribution of traffic to the end that all necessary facilities should be maintained and that the public should not be inconvenienced by inordinate uses of its highways for purposes of gain. This is not a case of a denial of the use of the highways to one class of citizens as opposed to another, or of limitations having no appropriate relation to highway protection. It is not a case of an arbitrary discrimination between the products carried, as in the case of *Smith* v. *Cahoon,* 283 U. S. 553, 567. The pro-

vision of § 7 permitting increased loads under the stated conditions applies to all persons and to all products. The discrimination is simply in favor of short hauls and of operations which, as the District Court found, are confined to small areas and greatly reduce the danger of traffic congestion and highway casualties. The limitation of the length of vehicles, covered by the exception, to 55 feet, and of the weight of their loads to 14,000 pounds, must be taken to be within the legislative discretion for the same reasons as those which were found to sustain the general limitation of size and weight to which the exception applies.

Another objection to classification is based on the fact that the limitation of § 5 [10] applies to " commercial motor vehicles " which, as defined in the Act, do not include passenger buses. The latter motor vehicles, while subject to the general limitation of " 600 pounds per inch width of tire upon any wheel concentrated upon the surface of the highway," are not subject to a load limit. The District Court found, as above stated, that there were only 900 passenger buses operating over the Texas highways (representing less than .004 of one per cent. of the total number of vehicles) and that the difference between the two types of vehicles and number of each type and in the conditions of operations were such as to support the classification. Appellants press the contention that, as admitted by the District Court, the damage to the highways is as great from a load of persons as from a load of freight, and that the combined weight of vehicles and load in the case of passenger buses is greater than the combined weight of vehicles and load carrying freight where the net load is limited to 7,000 pounds. These considerations would be controlling if there were no other reasonable basis for classification than the mere matter

[10] See Note 3.

of weight. But in passing upon the question of the constitutional power of the State to fashion its regulations for the use of the highways it maintains, we cannot ignore the fact that the State has a distinct public interest in the transportation of persons. We do not think that it can be said that persons and property, even with respect to their transportation for hire, must be treated as falling within the same category for purposes of highway regulation. The peculiar importance to the State of conveniences for the transportation of persons in order to provide its communities with resources both of employment and of recreation, the special dependence of varied social and educational interests upon freedom of intercourse through safe and accessible facilities for such transportation, are sufficient to support a classification of passenger traffic as distinct from freight. There is no constitutional requirement that regulation must reach every class to which it might be applied,—that the legislature must regulate all or none. *Silver* v. *Silver,* 280 U. S. 117, 123. The State is not bound to cover the whole field of possible abuses. *Patsone* v. *Pennsylvania,* 232 U. S. 138, 144. The question is whether the classification adopted lacks a rational basis. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78; *Keokee Coke Co.* v. *Taylor,* 234 U. S. 224, 227; *Miller* v. *Wilson,* 236 U. S. 373, 384; *Carley* v. *Snook, supra; Smith* v. *Cahoon, supra.* We cannot say that such a basis is lacking in this instance.

In view of our conclusion that the limitation in § 5, and the exception in § 7 (§ 5b) are valid, it is unnecessary to consider the question which has been presented as to the validity of § 3 (f), if it were regarded as an independent provision, that is, in case the objections to § 5 were sustained. It appears to be conceded that under the ruling of the District Court as to § 5 and § 7 (§ 5b), which we have approved, motor transportation of uncompressed cotton is placed upon an equal basis with other articles of commerce. 56 F. (2d) at pp. 191, 193.

*Fifth.* Appellants also urge that § 2[11] is invalid as a delegation of power to the State Highway Department in violation of § 28, Art. I, of the Texas Constitution and of the Fourteenth Amendment of the Federal Constitution. We think that the objection is untenable. We agree with the District Court that the authority given to the department is not to suspend the law, but is of a fact-finding and administrative nature, and hence is lawfully conferred. See *Trimmier* v. *Carlton,* 116 Tex. 572, 591; 296 S. W. 1070. Under § 2, special permits may be granted by the department, for limited periods, for the transportation " of such overweight or oversize or overlength commodities " when it is found that they " cannot be reasonably dismantled," or for the operation of super-heavy and oversize equipment for the transportation of commodities ascertained to be of that character. This authorization, in our judgment, does not involve an unconstitutional delegation of legislative power. *Union Bridge Co.* v. *United States,* 204 U. S. 364; *United States* v. *Grimaud,* 220 U. S. 506; *Red " C " Oil Co.* v. *North Carolina,* 222 U. S. 380, 394; *Mutual Film Corp.* v. *Industrial Comm.,* 236 U. S. 230, 245; *Hampton & Co.* v. *United States,* 276 U. S. 394.

The decree of the District Court is affirmed.

*Decree affirmed.*