## PIPER v. BINGAMAN.

### MORF v. SAME.
### Nos. 2778, 2789.

District Court, D. New Mexico.
Nov. 30, 1935.

Herbert K. Greer, of Santa Fe, N. M., and Oren Parmeter, of Dallas, Tex., for plaintiff E. M. Piper.

Geo. E. Remley, of Santa Fe, N. M., Ralph K. Pierson, of Compton, Cal., and Samuel P. Block, of Los Angeles, Cal., for plaintiff Howard Morf.

Frank H. Patton, Atty. Gen., Quincy D. Adams, Asst. Atty. Gen., and E. R. Wright, of Santa Fe, N. M., for defendant.

Before BRATTON, Circuit Judge, and NEBLETT and KENNAMER, District Judges.

PER CURIAM.

These cases were submitted together and may be decided in like manner as they involve questions common to both. Plaintiff Piper resides in Dallas, Tex., and plaintiff Morf resides in Los Angeles, Cal. They are engaged separately in the business of purchasing used automobiles in Texas and adjacent states other than New Mexico, causing them to be transported in overland processions or caravans through the states of Texas, New Mexico, and Arizona and into California and there selling them at

wholesale to dealers in used automobiles. The object of each action is to restrain the defendant, as commissioner of revenue of the state of New Mexico, from enforcing collection of the tax provided in chapter 56, Laws of New Mexico 1935. Both plaintiffs attack the validity of the statute, charging that it is repugnant to the commerce clause (article 1, § 8, cl. 3) and the· Fourteenth Amendment to the Constitution of the United States, and, in addition, plaintiff Morf asserts that it was repealed by chapter 136 of the same legislative session.

The statute, in subdivision (d), § 1, forbids use of the highways of the state for the transportation of any motor vehicle on its own wheels for the purpose of sale either within or without the state which is not licensed by the state or owned and operated by a dealer duly licensed and operated under a dealer's license, without securing a special permit as therein authorized. The commissioner of revenue is then empowered to issue special permits upon payment of a fee of $7.50 for each single vehicle so transported and a fee of $5 for each vehicle towed or drawn by another. The pertinent part of the statute reads:

"No person, firm or corporation shall use the highways of the State of New Mexico for the transportation of any motor vehicle on its own wheels for the purpose of selling or offering the same for sale to or by any agent, dealer, purchaser or prospective purchaser whether such agent, dealer, purchaser or prospective purchaser be located within or without this state, unless such motor vehicle either:

"1. Is licensed by the State of New Mexico; or

"2. Is owned by an automobile dealer, duly licensed by the State of New Mexico and is operated under a dealer's license duly issued to such dealer; or

"3. A special permit for the use of the highways of this state for the transportation of. such vehicle, in the manner in which the same is being transported, has first been obtained and the fee therefor has been paid as hereinafter specified.

"Special permits for the use of said highways in the transportation of such vehicles shall be issued by the Commissioner of revenue of the State of New Mexico upon application on such form as said Commissioner may prescribe and upon payment of a fee of $7.50 for each

such vehicle transported by use of its own power and a fee of $5.00 for each such vehicle towed or drawn by another vehicle and not transported in whole or in part by the use of its own power." Section 1 (d).

■ Plaintiffs are engaged exclusively in interstate commerce in the transportation of their automobiles, but it is settled by repeated decisions that a state may lay upon operators of motor vehicles moving exclusively in interstate commerce a reasonable and nondiscriminatory tax as compensation for the use of the highways and as a fair contribution to the cost of police regulation of traffic. Hendrick v. Maryland, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385; Kane v. New Jersey, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222; Clark v. Poor, 274 U.S. 554, 47 S.Ct. 702, 71 L.Ed. 1199; Interstate Busses Corporation v. Blodgett, 276 U.S. 245, 48 S.Ct. 230, 72 L.Ed. 551; Interstate Transit v. Lindsey, 283 U.S. 183, 51 S.Ct. 380, 75 L.Ed. 953; Aero Mayflower Transit Co. v. Georgia Public Service Commission, 295 U.S. 285, 55 S.Ct. 709, 79 L.Ed. 1439. That general doctrine is conceded, but plaintiffs say that the statute does not come within its boundaries because the tax imposed is unreasonable, arbitrary, and discriminatory and bears no reasonable relation to the use made of the highways.

The automobiles transported by plaintiffs are moved in processions or caravans usually consisting of fourteen, sixteen, or eighteen vehicles. Quite frequently they are in units of two coupled together by the use of tow bars or other similar devices with no elasticity, or play between them. The front car in the pair is operated by the driver and it pulls or draws the second one. There is no connection between the respective braking systems of the two. Both are controlled by the brakes of the front car. It is obvious that the movement of automobiles in that manner and with the rear vision of the driver impaired by the second car provides a substantially less measure of safety than does the operation of a single vehicle; and caravans of this nature present difficulty and other hazards to travelers. It is often difficult on overtaking such a caravan to pass it. Much delay, inconvenience, and hazard is sometimes encountered. Moreover, there is a mechanic with each caravan and sometimes when one car or a unit of two cars has tire or mechanical trouble, all cars·

are stopped and that likewise causes traffic difficulty and hazard. And many of the persons who drive automobiles for plaintiffs are not employed regularly. They are not paid anything either as compensation for their services or for expenses. They bear their own expenses and drive the cars merely as a means of obtaining transportation to California. It may reasonably be inferred that they have scant interest in the business or the vehicle being driven and a minimum of regard for the safety of others using the highways. But that is not all. Due to the lack of elasticity or play between two vehicles attached by tow bars or other like devices, the rear car skids, particularly in going around curves, and that causes peculiar wear and tear of the highways. Transportation of automobiles in that manner for sale is a new and distinct commercial business. It bears marked features of dissimilarity from other kinds of transportation. Manifestly, the additional traffic hazards and the wear of the highways which it occasions cast a substantially heavier financial burden upon the state for maintenance and for the enforcement of police and safety measures.

It must be assumed that the Legislature took all of these elements and perhaps others into consideration in fixing the license upon transportation of that kind; and a wide range of discretion must be accorded to the legislative power in dealing with the classification of businesses including commercial transportation, and their subjection to and regulation through an excise or license tax. The propriety of legislative action within the scope of police power is not for the determination of the courts. All such questions relate to policy and are remitted to the judgment of the Legislature whose decision must stand even though its wisdom is fairly debatable. The exercise of scientific precision in classification and in the exaction of licenses or fees for the use of the highways is not essential to validity. Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167. A court is not free to substitute its judgment for that of the Legislature in respect to the choice of expedients or merits between different methods of fixing such fees. Making concrete application of that abstract doctrine, the judgment of the Legislature cannot be overthrown unless the license fee in question is manifestly unreasonable, arbitrary,

capricious, or without any reasonable relation to the use of the highways. When the differentiating features of transportation of this kind are borne in mind with the increased hazards of traffic, the deleterious effect upon the highways, and the heavier financial burden of upkeep and police regulations, we cannot say that the statute is open to the attack directed against it.

Next it is urged that the application of the statute to plaintiffs constitutes a discrimination against interstate commerce. The argument is divided into several parts. Stress is laid upon the fact that plaintiffs use and traverse only about 165 miles of highway in crossing the state and are required to pay the tax for each car making the single trip; that the tax is disproportionately high when compared to that exacted of others; and that a resident dealer may caravan automobiles into the state with his dealer's license plates attached and without payment of the tax provided in the statute under consideration. The fact that it is only 165 miles from the point at which vehicles transported by plaintiffs enter the state to the point at which they depart from it is not determinative. The license confers the right of transportation into or through the state without regard to distance. Plaintiffs have the privilege of transporting their automobiles by a longer route without additional charge. Certainly the exaction of a flat charge for such transportation, instead of graduating it upon a mileage basis which conceivably could entail substantial administrative difficulty and expense, cannot be said to constitute discrimination. Instead, it comes well within the range of legislative discretion over which a court has no supervisory control. Neither can it be regarded as objectionable discrimination when contrasted with the graduated fees required of those who operate trucks and busses. The clear and distinctive differences between the characteristics of transporting vehicles in caravans with that of operating single trucks or busses are matters for the Legislature to determine in fixing license fees and its determination of them cannot be disturbed unless the asserted discrimination is plain. The difference in kind or amount of the license fees here is not enough to call discrimination. The contention that there is discrimination in the fact that a resident dealer may caravan automobiles into the state

with his dealer's plates attached and without payment of the tax provided in the statute under consideration rests upon an unfounded premise. A resident dealer may obtain a dealer's demonstration number. The annual fee of $50 entitles him to one pair of plates and he may secure additional plates upon payment of $10 for each paid. Section 11-330, Comp.St.N.M. 1929. But such plates may be used only on automobiles used exclusively for demonstration purposes. They may not be attached to automobiles which are caravaned into the state for other purposes. To illustrate, if a dealer should desire to caravan twenty automobiles into the state, only two of which are to be used for demonstration purposes, his dealers' plates may be attached to the two, but he would be required to pay the tax on the eighteen and secure a special permit in accordance with the statute.

We come now to the contention that chapter 56, supra, was repealed by chapter 136 of the same session. The former was approved on February 21st; the latter on February 28th, and it contains no provision expressly repealing the former act. It is unnecessary to suggest that repeal by implication is not favored and that both statutes should be construed together and in harmony with each other if that can be done without violating the plain language used or the manifest legislative intent. Chapter 56 is essentially substantive in character. It forbids the use of the highways for the transportation of automobiles for sale without payment of the fee and the securing of the special permit authorized therein. That is the major purpose of the act. On the other hand, the object of chapter 136 is to facilitate greater efficiency in unified administration of the laws respecting the highways, including police regulations and taxes. That legislative objective is stated at length in the first section. After creating a port of entry board composed of the state highway engineer, a member of the state corporation commission, and the commissioner of revenue, authorizing the establishment of ports of entry into the state and elaborate procedure for the examination, registration, and issuance of permits to motor vehicles for the transportation of passengers for hire or for the transportation of property which enter the state, a mileage tax is levied from the point of entry to the point of destination, graduated on the basis of weight of vehi-cle and cargo. It is then textually provided that the tax shall not apply if the owner or operator elects to register the vehicle with the bureau of revenue and pay the fees required for the issuance of license plates. At the time that law was enacted, there were two existent statutes with respect to fees on automobiles. One provided for registration, payment of license fees, and the issuance of license plates. It was clearly provided that both such fees and the mileage tax should not be exacted; that payment of such registration fees should render the owner or operator immune from payment of the mileage tax. The other was the statute in question which requires payment of the so-called caravan fee. No such provision is found against payment of that fee and the mileage tax at the same time. The care with which the Legislature interdicted exaction of both in one instance and failed to do so in the other is significant. It indicates persuasively an intent in the latter instance to require both; in other words, that the mileage tax shall supplement the flat fee. Thus there is no conflict between the two statutes. On the contrary, they are in harmony and operate together with respect to transportation of the kind involved here. And there is no obstacle to the imposition of different licenses and taxes by successive acts if together they are reasonable and nondiscriminatory. Interstate Busses Corporation v. Blodgett, supra.

These are our conclusions of law. For the reasons indicated, the bills will be dismissed for lack of equity.

FRANKLIN E. KENNAMER, District Judge (dissenting).

There can be no doubt that a state may lawfully exact of interstate traffic a tax which bears a fair relation to the expense occasioned to such state by the presence of such traffic upon its highways.

There is also no doubt that the Legislature of a state may make any reasonable classification of interstate traffic, for tax purposes, so long as the classification is defined by characteristics which bear some relation to the expense or hazard occasioned by the class.

Interstate traffic in motor vehicles may be the subject of such a classification. The constitutional limitation imposed upon the power of the Legislature to levy taxes upon any such class is, that it must

be in a sum which is a fair contribution to the cost of constructing and maintaining the highways, and of regulating traffic thereon.

In my opinion the statute in question, being subdivision (d) of section 1 of chapter 56, Laws of New Mexico 1935, does not accomplish a proper classification. An analysis of the statute discloses that the classification is defined by two limitations. The first is expressed in the following excerpt from the statute: "Any motor vehicle on its own wheels." The second dimension of the classification is as follows: "For the purpose of selling or offering the same for sale." Two characteristics, and only two, are necessary to render the vehicle subject to the tax. It must be moving on its own wheels and must be transported for the purpose of sale. Of the two restrictions upon the class, the latter is the dominant.

Reduced to its substance, the classification attempted is of vehicles being transported "for the purpose of sale," not of vehicles moving in integrated fleets which may, and doubtless do, occasion extra traffic hazards requiring unusual and expensive policing of the highways. The tax is levied alike upon vehicles moving in fleets and upon vehicles moving singly, so long as the same are goods seeking their market; notwithstanding the evident fact that the single "purpose of sale" vehicle cannot conceivably cause the state a greater expense by wear to the highways and policing than the same vehicle will occasion in traversing the state in pursuit of other commercial enterprises not subject to the tax.

Some point is made of the fact that two vehicles moving in tandem, under the power of one only, cause greater damage to the roads than two vehicles moving separately, each under its own power. Further point is made of the increase in traffic hazard by reason of the transportation of vehicles in tandem, which is occasioned by the lack of integrated brake control. An examination of the taxing statute discloses the tandem practice of transportation to be encouraged rather than penalized in proportion to the increase in expense and hazard. Single vehicles, whether moving in fleets or not, are charged the flat rate of $7.50 per car. Vehicles in tandem (which the state contends to be more dangerous and more damaging) are offered a discount of $2.50

upon the gross tax levied against the two automobiles. It is plain that the average charge per car decreases as the traffic hazard is emphasized by the transportation of vehicles in tandem. The statute actually offers a premium for the complication of the state's traffic problem.

I am strongly of the opinion that a proper tax classification of vehicles moving in integrated fleets for any purpose would be proper. The statutes in question do not accomplish such classification. Doubtless the state of New Mexico has power to regulate the number, the speed, and generally control the deliberate concentrations of traffic, whether in interstate commerce or not. The state may even require caravans to proceed under convoy, so long as the regulation reasonably relates to public safety or convenience. It follows that the state may exact of such traffic a charge in excess of the charge upon other traffic to defray the expense of the additional service required of the state because of its class character. But when levied against interstate commerce, the excess must be shown fairly to approximate a recoupment of an excess of expense occasioned to the state by reason of the peculiarities which form the basis of its classification.

I am of the opinion that the statute involved is invalid, in so far as the same relates to interstate commerce, and that the enforcement thereof should be enjoined.