### HOUSTON & NORTH TEXAS MOTOR FREIGHT LINES et al. v. PHARES et al.

### No. 905.

District Court, N. D. Texas, Fort Worth Division.

May 14, 1937.

Sam McCorkle, Gerald Mann, and M. R. Irion, all of Dallas, Tex., for complainants.

William C. McCraw, Atty. Gen., of Texas, and Curtis Hill, Asst. Atty. Gen., of Texas, for respondents.

Carl Callaway, of Dallas, Tex., for intervener Southwestern Compress & Warehouse Ass'n.

J. H. Tallichet, of Houston, Tex., and W. E. Allen, Fred Wallace, and Robert Harrison, all of Fort Worth, Tex., for intervening railroads as follows: Texas & P. Ry. Co.; Texas & N. O. Ry. Co.; Chicago, R. I. & G. Ry. Co.; Fort Worth & D. C. Ry. Co.; Wichita Valley Ry. Co.; Gulf, C. & S. F. Ry. Co.; Frisco Lines; Cotton Belt; Texarkana & Ft. S. Ry. Co.; Pan Handle & S. F. Ry. Co.; and Louisiana, A. & T. Ry. Co.

Joseph B. Hays, of Chicago, Ill., for Western Railroad Ass'n.

DAVIDSON, District Judge.

You have presented here an important question. In the light of the former opinion by Judge Hughes, Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167, and in the light of certain more recent decisions, the court thinks that it deserves, perhaps, a written opinion.

This is a suit, No. 905, in equity, in the Fort Worth Division, styled Houston & North Texas Motor Freight Lines et al. v. L. G. Phares et al. By this bill the parties attack the constitutionality of article 827a, §§ 3 and 5, of Vernon's Annotated Penal Code of Texas, with special reference to that provision which limits the weight of a commercial load or the load upon a commercial truck to 7,000 pounds. It is contended that other states allow a larger load. It is contended that certain roads, U. S. Highways 75 and 77 and others, will support a greater load.

The effect of an affirmative order or action upon the bill would be to hold that the action of the Legislature in passing this section of the Penal Code was unwise and

that the subsequent terms of the Legislature have unwisely allowed it to remain unamended and without modification.

As has been suggested, there are three branches of the government, both national and state: The legislative branch to make the laws, to enact the laws to meet the need and requirements of the state; the executive to enforce the law, to preserve the sovereignty of the state; and the judicial to interpret the law so as to administer justice. The relative position of each branch has been jealously guarded. Perhaps the guardianship of this relation lies more largely upon the courts than the other branches.

The pleading here raises the question of the unreasonableness and the alleged burdensomeness of the restriction of this article of the Texas Penal Code. It is not the prerogative of a court to determine when a Legislature should amend a law or when it should repeal one, or when a law is wise or unwise. The complainant's contention might well prevail if it were a question of regulation of traffic or of freight rates over private regulated ways, but it overlooks the proprietary right of a state in its highways and it overlooks the police power of the state. The complainants have a permissive right on the highways and not an absolute right. The state may in its sovereign power elect to build or not to build a highway. It may build a road and limit the uses to which it may be subjected. This is a proprietary right as well as a right proper and necessary to the exercise of its police power incident to the right of self-government.

The policy of a state must of necessity be determined by its lawmaking body rather than by the courts. This is true not merely as a matter of choice but of necessity and is not discretionary with the courts. The government of the United States, for instance, fosters the air service. It fosters marine service. At no distant time we may have four branches, four major branches of commercial transportation, the water, the land by highway and by rail, and through the reaches of the air. With the constant development in science, the time may be very near at hand when motor transportation both by highway and by planes propelled through the air may largely crowd out the other two. Yet as a part of the state and national welfare, as a part of the national defense, or, in other words, as a part of the general policy of the nation, the government may see fit to handicap one of these branches of transportation to a degree in order to preserve and keep the other for such uses as it may deem proper and necessary. Matters of policy are not determined by the court and should not be determined by the courts, but must of necessity be determined by the Congress, when national, and by the Legislature where confined to the state.

One question that, in the court's mind, is determinative of the issues raised is that it is a proper exercise of the police power of a state to preserve uniformity and avoid congestion in its highway system. Take the testimony of the witness Gilchrist, the state highway engineer. When asked by the court what his idea would be as to an ideal traffic situation, he said, in substance: I think that a greater weight might be allowed upon the highways but I think it ought to be limited to a speed of twenty-five miles an hour, and the width should be limited to eighty-four inches. I am inclined to agree with the witness Gilchrist. If I were the Legislature or if this court is, as might appear from some of the argument, clothed with legislative power as it were, I think I might allow this increased weight and decrease the speed. But that is not the prerogative of this court. And in the basic conception of our government it was not, according to the belief of this court, intended ever to become a prerogative of the judicial branch. The very situation shows the necessity of its being regulated by the legislative branch of the government because the legislative body could decrease the speed and increase the weight. The court could not do so. That is, the court does not feel that he should do so. To attempt to do so would not only constitute a court of equity a legislative branch, but it would make of it an administrative branch of the government. I think that one of the decisions presented here contains a provision, however, that goes that far, wherein is specified the manner in which worthy and sufficiently strong highways may be differentiated from those that are not.

To grant the relief sought here would amount to a further encroachment of the federal courts over the power of a state government and thereby deprive the states more and more of the right to determine and control their policies. I think these matters until otherwise expressly provided for by constitutional provisions should be, under well regulated rules of equity, left

undisturbed and every doubt and every intendment resolved in favor of the sovereignty over the question of the state and its authority in its police power."

In this case there is the question of whether or not the national Congress has entered this field. In the Motor Carrier Act of 1935 (section 225 [49 U.S.C.A. § 325]) we find this provision: "The Commission is hereby authorized to investigate and report on the need for Federal regulation of the sizes and weight of motor vehicles." As to whether or not the Interstate Commerce Commission in the delegated exercise of constitutional power granted to the federal government would have power to encroach upon the legislative enactments of the state of Texas, reasonably within its police power, is not decided here. But if we assume, if we concede as contended by counsel that the United States government has entered this field of regulating the weights of motor vehicles, and if it is a question of interstate commerce, it would be, under the act, a matter to be determined by the Interstate Commerce Commission. However, no specific act has been enacted by Congress that directly enters the field. When the Interstate Commerce Commission is directed by Congress to institute an inquiry into the very thing this court is now inquiring into, and if it be within the province of the federal government to transgress upon the police power of Texas with reference to fixing the weight of trucks engaged in interstate commerce upon its highways, then it is suggested that in the absence of any emergency any decision or action of this court should be deferred until the findings of the Interstate Commerce Commission are made on that point. The pleading here discloses, in sections 15 and 20 of the bill, that the complainants have developed and built up a prosperous business under the existing laws. That being true, an emergency does not yet exist. It may be conceded that if the weight these trucks are permitted to carry were increased to 14,000 pounds, they could succeed even better and could allow to the public a cheaper and lower rate. But as the weight and size of trucks is a matter regulated by the state of Texas under the authority of its police power, this court has no control over it. And it is the belief of this court that it is a matter within the police power and realm of authority of the state of Texas. Whether it be wise or unwise is not a matter for the court to determine.

Believing, therefore, the case to be without equity and to present no element or question that would enable this court or require this court to overturn an existing statute of the state, the bill will be denied.