LAKEWOOD EXPRESS SERVICE, INC., PROSECUTOR, v.
BOARD OF PUBLIC UTILITY COMMISSIONERS OF THE
STATE OF NEW JERSEY AND LINCOLN TRANSIT CO.,
INC., DEFENDANTS.

Argued January 21, 1948—Decided July 23, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutor, *Stein, Stern & Conford* (*Milton B. Conford,* of counsel).

For the defendant Board of Public Utility Commissioners, *Walter D. Van Riper,* Attorney-General, and *Daniel DeBrier,* Deputy Attorney-General (*Frank H. Sommer,* Deputy Attorney-General, of counsel).

For the defendant Lincoln Transit Co., Inc., *George M. Eichler*.

The opinion of the court was delivered by

HEHER, J. *Certiorari* was granted to review an order made by the State Board of Public Utility Commissioners on July 30th, 1947, directing prosecutor to cease and desist from the operation of autobuses of the sedan type in interstate transportation for hire between the City of New York, in the State of New York, and the Township of Lakewood, in New Jersey, for failure of compliance with the specifications for the construction and equipment of autobuses prescribed by the Board's Regulation B-7, and for nonproduction of evidence of public liability and property damage insurance in accordance with the Board's rules and regulations.

The evidence of insurance has since been supplied; and the Board concedes that, were it not for noncompliance with the regulation as to vehicular construction and equipment, the restraint imposed would be justifiable only so long as there was nonconformance with the provision for insurance.

Prosecutor is exclusively a common carrier of passengers in interstate commerce; and the first point made is that, since it is not engaged in intrastate business in any degree, Regulation B-7 has no application and the order under review is *coram non judice*.

*R. S.* 48:4–18, before the amendment in 1946 of *R. S.* 48:4–1, invested the Utility Commission with power to prescribe "reasonable regulations with respect to the construction and equipment of autobuses carrying passengers between points in this state and points in other states * * * consistent with regulations prescribed by the board applying to the operation of autobuses between points in this state." The definition of the term "autobus" in *R. S.* 48:4–1 was held by this court to be inclusive of sedan automobiles. *Nutley-Times Square Service* v. *Board of Public Utility Commissioners*, 109 *N. J. L.* 289; *Greenfield* v. *Board of Public Utility Commissioners*, 131 *Id.* 361. But by chapter 125 of the Pamphlet Laws of 1946 (*Pamph. L., p.* 602), amending *R. S.* 48:4–1, *supra*, the word "autobus," as used in chapter 4 of title 48

of the Revised Statutes, was redefined to mean and include, "except as hereinafter noted, any motor vehicle or motorbus operated over public highways or public places in this state for the transportation of passengers for hire in intrastate business, notwithstanding such motor vehicle or motorbus may be used in interstate commerce." Does this redefinition of the term suggest a legislative design to exclude autobuses engaged exclusively in interstate passenger transportation from the category subject to regulation under *R. S.* 48:4–18? Was it the legislative purpose to leave to the federal authority the regulation of vehicles of this class engaged only in interstate commerce? We are clear that such was not the intention.

The amendment of 1946, cited *supra,* was not designed to modify section 48:4–18. There was no express modification of this provision; and the use of the qualifying clause, "except as hereinafter noted," in the definition of the term "autobus" in the amendment of 1946 is significant of an intention and purpose to preserve section 48:4–18 intact, and likewise sections 48:4–19 and 48:4–20, the former imposing the obligation of liability insurance on "interstate buses" and the latter levying an excise tax upon interstate operations. The exception is the key to the intention. Repeal by implication is not favored in the law. The repugnancy must be such as that the two statutory provisions cannot stand together.

Secondly, it is said that Regulation B-7 is "unreasonable and therefore illegal and unconstitutional in so far as it absolutely prohibits sedans for use in interstate transportation of passengers for hire." The interstate commerce clause of the Federal Constitution and the due process clause of the Fourteenth Amendment are invoked; and it is suggested also that the regulation infringes the standard of reasonableness laid down in section 48:4–18, cited *supra.*

The state may regulate the use of its highways in respect of the size and weight of motor vehicles employed thereon in interstate commerce. The Congress has not yet invested the Interstate Commerce Commission with exclusive regulatory power in that regard; the Commission's jurisdiction is limited to "safety of operation and equipment." 49 *U. S. C. A.,* §§ 301-327. The "sizes and weights of automobiles have an

important relation to the safe and convenient use of the highways, which are matters of state control." *Maurer* v. *Hamilton,* 309 U. S. 598; 60 *S. Ct.* 726; 84 *L. Ed.* 969; *Sproles* v. *Binford,* 286 *U. S.* 374; 52 *S. Ct.* 581; 76 *L. Ed.* 1167. The purport of the last cited statute "is to reserve 'sizes and weights' from the regulatory powers" of the Interstate Commerce Commission, "quite as much when related to safety as when related to highway construction." *Maurer* v. *Hamilton, supra.* But "the means of regulation chosen" by the state must be "reasonably adapted to the end sought." *South Carolina Highway Department* v. *Barnwell Bros.,* 303 *U. S.* 177; 58 *S. Ct.* 510; 82 *L. Ed.* 734.

The sedan type of automobile does not satisfy the specifications of Regulation B-7, in regard to construction and equipment; and thus, it is said, the regulation constitutes "the total prohibition of a particular type of autobus not inherently unsafe or dangerous," although section 48:4–18 confers the power to regulate merely. It is suggested that the prohibition was in reality intended "to protect interstate bus lines from sedan competition." We take a different view.

We shall not recite the evidence in detail. It suffices to say that the proofs establish to our satisfaction that the cited regulation was adopted with a view to public safety, security and convenience alone, and not for the suppression of competition; and this is the test of the constitutional sufficiency of the object in view. *Buck* v. *Kuykendall,* 267 *U. S.* 307; 45 *S. Ct.* 324; 69 *L. Ed.* 623; *N. J. Good Humor, Inc.,* v. *Bradley Beach,* 124 *N. J. L.* 162; *Regal Oil Co.* v. *State,* 123 *Id.* 456. And the means adopted to that end are entirely reasonable and appropriate and in no sense arbitrary or oppressive. In the experienced judgment of the Utility Commission, the weight and dimensional standards prescribed by the regulation bear a real and substantial relation to safety in transportation; and we cannot brand the action as arbitrary. This court in effect so found in *Nutley-Times Square Service* v. *Board of Public Utility Commissioners, supra.* There is no suggestion that the particular requirements, so long in effect in this state, are at variance with the established general standards obtaining elsewhere.

It is urged that section 48:4–18 constitutes a denial of the equal protection of the laws in violation of the Fourteenth Amendment, in that the jurisdiction of the Utility Commission does not extend to autobuses using this state's highways on journeys "from a point outside the state to another point outside the state."

State concern for the safety, comfort and convenience of such passengers in interstate transportation whose trip begins or ends in New Jersey is not discriminatory in the vicious sense because the regulations are not made applicable to those of the class cited by prosecutor. The state has a distinct and special public interest in the transportation of persons of the former class. *Sproles* v. *Binford,. supra.* The question of the relative need is essentially one for the legislative judgment. It is not necessary that the regulation be extended to all cases which it might possibly reach. The state is not bound to cover the whole field of possible abuses. If the rule "presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied." *West Coast Hotel Co.* v. *Parrish,* 300 *U. S.* 379; 57 *S. Ct.* 578; 81 *L. Ed.* 703; *Sproles* v. *Binford, supra; Amodio* v. *Board of Commissioners of West New York,* 133 *N. J. L.* 220.

The order is affirmed, with costs.