JUNG, Plaintiff in error, v. STATE, Defendant in error.

*No. State 87. Argued September 11, 1972.—Decided October 3, 1972.*
(Also reported in 201 N. W. 2d 58.)

For the plaintiff in error there was a brief and oral argument by *Anthony K. Karpowitz,* Legal Aid Society of Milwaukee.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J. The statute under which the defendant is charged is, in part, as follows:

"**947.15 Contributing to the delinquency of children; neglect; neglect contributing to death.** (1) The following persons may be fined not more than $500 or imprisoned not more than one year in county jail or both, and if death is a consequence may be fined $1,000 or imprisoned not more than 5 years:

"(a) Any person 18 or older who intentionally encourages or contributes to the delinquency or neglect of any child; or

"(b) . . .

"(2) An act or failure to act contributes to the delinquency or neglect of a child, although the child does

not actually become neglected or delinquent, if the natural and probable consequences of that act or failure to act would be to cause the child to become delinquent or neglected."

The statutory definition of a "delinquent" child appears in sec. 48.12:

"**Jurisdiction over children alleged to be delinquent.** The juvenile court has exclusive jurisdiction except as provided in ss. 48.17 and 48.18 over any child [2] who is alleged to be delinquent because:

"(1) He has violated any state law or any county, town, or municipal ordinance; or

"(2) He is habitually truant from school or home; or

"(3) He is uncontrolled by his parent, guardian or legal custodian by reason of being wayward or habitually disobedient; or

"(4) He habitually so deports himself as to injure or endanger the morals or health of himself or others."

The complaint upon which the defendant was charged and tried provided in part:

". . . the above-named defendant on and between the 15th day of November A. D., 1970, thru the 15th day of December A. D., 1970, in the County of Milwaukee, Wisconsin, did contribute to the delinquency of the complainant's daughter, Nadara ———, age 15, date of birth, 7–6–55 in that she stayed at the defendant's apartment, 730 North 23rd Street, Milwaukee, Wisconsin, for approximately 30 days, contrary to Section 947.15 of the statutes, . . .

"Complainant further states that her information is based upon a statement by her daughter Nadara ———, who states that she ran away from home in September, 1970, and that in mid-November, 1970, she moved into the defendant's apartment, 730 North 23rd Street, Milwaukee, Wisconsin, and stayed there for approximately one month. Further on personal knowledge that Nadara is 15 years old, date of birth 7–6–55."

---

[2] Sec. 48.02 (3), Stats., defines a "child" as a person under eighteen years of age.

On this appeal the defendant contends: (1) That the complaint is insufficient; (2) that the evidence is insufficient; (3) that the court erred in allowing the minor to testify as to sexual relations; and (4) that the statute is unconstitutional as being vague.

A resumé of the facts as they appear in the record is as follows:

The complaint, in substance, charges that the defendant contributed to the delinquency of the complainant's daughter, Nadara ———, age fifteen, in that Nadara stayed at the defendant's apartment at 730 North 23rd Street, Milwaukee, Wisconsin, for approximately thirty days in violation of sec. 947.15 (1) (a), Stats. The complainant, Beatrice Gartmann, is the mother of Nadara ———. Nadara was also known as Chequela (Candy) Johnstad. She will hereinafter be referred to as Nadara.

In the latter part of September, 1970, Nadara ran away from her home located at 2311 Twelfth Avenue, South Milwaukee, Wisconsin. Her mother reported her missing to the South Milwaukee police. The mother did not give Nadara permission to leave home, and Nadara did not return home until December 18, 1970. It appears that Nadara was a runaway from home, truant and wayward from September 25, 1970, until December 18, 1970.

Nadara met the defendant in October, 1970, at two downtown bars or bars and restaurants on two different occasions before she stayed at his apartment. The testimony is conflicting as to what conversations actually took place between the parties at these two different places. Especially as to who asked who about staying at the defendant's apartment. It is clear that at some time during either of these meetings Nadara told the defendant that: (1) She did not have a place to stay; (2) that she was going to be working with Mr. Schmidt at Holiday Magic, which is a local cosmetic firm; (3) that falsely, her name was Candy Johnstad; (4) that falsely, she just moved down to Milwaukee from Eau Claire; and

(5) that falsely, she was twenty-one years old. Nadara never told the defendant that: (1) She was really from South Milwaukee; (2) that she was a runaway; (3) her real age; and (4) her real name. Thereafter the defendant gave Nadara the address to his two-bedroom apartment which he shared with one Benjamin J. Keeley. The testimony conflicts as to the reasons why the address and offer to stay were given. Nadara testified that she never asked to stay at his apartment nor for his address. Instead, when he found out she was without a place he just gave her his address and told her that if she needed a place she could stay at his apartment. She went to his apartment in November, asked if she could stay, and he said yes. Nadara then stayed at the defendant's apartment on several occasions thereafter.

As to specifically when and exactly how long she stayed there the testimony is conflicting, but it was during the period when she was a runaway. The defendant asserts it was only twice for a period of a few days. In contrast, Nadara asserts she stayed at the defendant's apartment a total of approximately thirty days at different times. During these stays they started getting involved and fought over her going out so much at night. She left on occasions because of these arguments and defendant always asked her to come back.

Over the defendant's objection, Nadara then testified that during the November-December period she had sexual intercourse with the defendant about fifteen times. The defendant denies having such acts with Nadara. Both Keeley and the defendant testified that at no time did the defendant have such contact with Nadara. Further, whenever there was contact it was merely platonic and his roommate, Keeley, was always there. Defendant testified that at all other times he was working at the Club Lido seven days a week from about 11:50 a. m., to the legal closing time for bars. His duties at the club were doorman, projectionist, collecting admis-

sion charges, and checking I. D. cards to make sure minors did not get in.

The defendant also testified that during her second stay he dropped her off downtown one morning and at that time she told him she was not twenty-one but nineteen. His reactions were mixed, and he told her she could no longer stay at his place. He then called Keeley, told him her age and stated that Nadara could not stay there anymore. When he got home she was gone and he never saw her again until the trial. Nadara testified that before she ever stayed at the defendant's apartment she told him she was twenty-one. He said he did not believe her and then she said she was nineteen. He then said nothing. The defendant was thirty-nine years old, divorced, and the father of four children. He had a previous criminal record.

The defendant contends that the complaint does not state a crime in that it contains no statement of the defendant's acts and that it fails to state an act on Nadara's part within the definition of delinquency.

In *State ex rel. Schulter v. Roraff* (1968), 39 Wis. 2d 342, 159 N. W. 2d 25, certiorari denied, 393 U. S. 1066, 89 Sup. Ct. 716, 21 L. Ed. 2d 709, we held that the criminal statute, secs. 947.15 and 48.02 (3), and herein add sec. 48.12, must be construed *in pari materia,* and that such statute sets forth the age of children, describes a delinquent child and makes it a criminal offense to intentionally encourage or contribute to the delinquency of a child.

The complaint, in its entirety, sets forth the age of the child, that she was in fact truant and wayward, and that the defendant at a defined time and place did contribute to this delinquency by allowing her to stay at his apartment. We believe these factual allegations do set forth facts known in law to be a crime so that the court has jurisdiction to try and determine the matter. Any other objections the defendant may have had to the complaint were waived by his failure to make known his objection

prior to trial. Here no objection to the complaint of any kind was made until after trial.

The defendant next contends that the evidence is insufficient to prove an intention to commit the crime charged as required by sec. 947.15, Stats. He states he did not know the girl was fifteen years old and did not know she was a wayward or runaway, and that he must have knowledge of those facts which are necessary to make his conduct criminal.

The defendant's lack of knowledge of the girl's age is not a defense.

Sec. 939.23, Stats., provides, in part:

"**Criminal intent.** . . . .

"(3) 'Intentionally' means that the actor either has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result. In addition, except as provided in sub. (6), the actor must have knowledge of those facts which are necessary to make his conduct criminal and which are set forth after the word 'intentionally'.

". . .

"(6) Criminal intent does not require proof of knowledge of the age of a minor even though age is a material element in the crime in question."

Sec. 939.43, Stats., provides:

"**Mistake.** (1) An honest error, whether of fact or of law other than criminal law, is a defense if it negatives the existence of a state of mind essential to the crime.

"(2) A mistake as to the age of a minor or as to the existence or constitutionality of the section under which the actor is prosecuted or the scope or meaning of the terms used in that section is not a defense."

The defendant's contention that there is no proof that he knew that the girl was wayward or truant did not have to be accepted by the jury. Without again detailing the evidence, the circumstances under which he met the girl, her appearance, his questions as to her age, his willingness to allow her to stay in his apartment, his "involvement" with her and his expressed jealousy, were

all factors that could be considered by the jury as to his knowledge of her truancy and waywardness and his conduct toward her insofar as it contributed to a danger to the morals of the child. The facts of this case could well lead the jury to conclude that the defendant intentionally contributed to the delinquency of the child. The facts hardly describe a humanitarian extending shelter and protection to a forlorn young person.

The defendant complains that it was error to allow the girl to testify as to acts of sexual intercourse with the defendant at his apartment during the time in question. The defendant argues that the complaint did not inform him of these serious accusations which came as a surprise and denied him due process under art. I, sec. 7, Wisconsin Constitution.

The defendant was not charged nor convicted of fornication nor the more serious crime of sexual intercourse with a child and could not have been under allegations of the complaint here. If the evidence had been offered for that purpose the objection should have been sustained. Here the only charge was contributing to the delinquency of a minor. The evidence of sexual intercourse, considered together with other evidence as to the defendant's conduct, was relevant to show the defendant's intention in allowing the girl to stay in his apartment and, as such, is admissible in evidence.

The defendant also challenges the constitutionality of sec. 947.15, Stats., upon the ground that it is vague, and upon the ground that vagueness leads to an unconstitutional delegation of power, art. IV, sec. 1, Wisconsin Constitution, and to a violation of *ex post facto* laws, art. I, sec. 12. In *State ex rel. Schulter v. Roraff, supra,* we held this statute was not unconstitutionally vague and we are not convinced that it is unconstitutionally infirm in any other respect.

*By the Court.*—Order affirmed.