ALEX J. RAINERI, District Attorney, Iron County
You advise that, pursuant to sec. 48.06 (2) (b) of the Children's Code, the Iron County Welfare Department has been authorized to furnish investigative and supervisory services to the juvenile court. You indicate that in the past, a child welfare worker did not become *Page 280 
involved in the prejudicial investigation of any juvenile matter pursuant to sec. 48.19, Stats., until and unless a referral was made to him in writing which recited probable cause for the investigation and was signed by a police officer. Of late, you explain, the juvenile court judge has ordered an investigation based on information he receives "from persons, newspaper items or . . . any source whatsoever." In many of those cases, you add, the police had conducted an investigation and were requested to drop the matter by all parties concerned. As to these cases, you indicate that the juvenile court judge has directed the child welfare worker to reopen the matter and report to him.
Premised upon such information, you make the following inquiries: (1) What is the method provided by Wisconsin law for making a complaint to the court concerning a juvenile pursuant to sec. 48.19, Stats.? (2) What kind of complaint is necessary to commence proceedings against a juvenile pursuant to sec. 48.19, Stats.? (3) Can a child welfare worker be ordered to investigate a juvenile without a written complaint of referral made either to him or to the court by a person?
Your questions are best answered together. Section 48.19, Stats., provides in part as follows:
 "48.19 Informal Disposition. Whenever any person gives the court information tending to show that a child comes within the provisions of s. 48.12 or 48.13, an investigation shall be made by persons designated by the court to determine the facts. . . . If the investigation shows that the child is within the provisions of s. 48.12 or 48.13 the court may authorize the filing of a petition under s. 48.20 or, if it determines that neither the interests of the child nor of the public require that a petition be filed, may defer further proceedings on the condition that the child appear with his parents, guardian or legal custodian for counseling and advice . . ." (Emphasis added.)
In sum, your questions are directed to the form and manner of the initial "giving of information to the court," referred to in the emphasized language above, which then triggers the pre-petition investigation by the child welfare worker. As to these matters, there is little if any direction provided by the legislative history of the *Page 281 
Children's Code or the decisions of the Wisconsin Supreme Court interpreting such Code.
The emphasized language about which you inquire originated with sec. 48.06 (1), Stats. (1929), and was enacted by ch. 439, sec. 3, Laws of 1929. It provided that:
 "[w]henever any person gives to the juvenile court information tending to show that a child is neglected, dependent or delinquent, or that such child has committed any act or has pursued a course of conduct which if found true would make him a delinquent child, the court shall make preliminary inquiry to determine whether . . . formal jurisdiction should be acquired. . ."
However, there was then and there is now no requirement that the initial information provided to the court be in writing or that it be in the form of a police complaint signed by a police officer, although in most instances that is the manner in which a juvenile is referred to the juvenile court. There is no question but that the procedure of police referral was recognized as proper under sec. 48.06 (1) and would therefore still be proper under the present sec. 48.19. In the case of Harry v. State
(1944), 246 Wis. 69, 76, 16 N.W.2d 390, that procedure was utilized and its propriety implicitly acknowledged by the Wisconsin Supreme Court. However, nothing in the decision in Harry restricted the form or manner of providing information to the court simply to police referral. Moreover, in the case ofLueptow v. Schraeder (1938), 226 Wis. 437, 439, 277 N.W. 124, it appears that the same language of sec. 48.06 (1) was implicitly satisfied where members of the school board appeared before the juvenile court judge in person and complained under oath of certain delinquent acts of specified juveniles. Again, however, nothing in the Lueptow decision is restrictive of the manner by which such information is provided to the court nor the form such information must assume. The requirements of giving information to the juvenile court which triggers a pre-petition investigation appear to have been determined solely from the statutes themselves. Therefore, any guidelines as to form and manner must be gleaned from a reading of sec. 48.19 itself in conjunction with any statutes which are in pari materia. Moreover, any such interpretation must be broad enough to cover the *Page 282 
two methods of referral implicitly sanctioned by the Wisconsin Supreme Court in Harry and Lueptow.
It is therefore my opinion, grounded upon the foregoing analysis and sec. 48.19, Stats., that there are only three definitive requirements which must precede the commencement of a prepetition investigation. First of all, the information must be provided to the court by a "person." Generally, this term is understood as denoting a natural person unless from the context it appears that artificial persons such as corporations were intended to be included therein. 70 C.J.S., Person, pp. 688-689. In view of the fact that there appears to be no such indication in sec. 48.19 that "person" refers to an artificial person, it follows that the word "person" refers herein to a human being. This works no hardship on the public since a corporation or a school board would supply information to the court through one of its officers.
Secondly, since sec. 48.19 provides, "[w]henever any persongives the court information . . ." (emphasis supplied), it is my opinion that there exists a requirement that such information be specifically directed to the court. This second requirement would seem to preclude the obtainment of information by a juvenile court judge who reads an article in a newspaper since the information supplied by a newspaper is not specifically directed to the juvenile court. It must also be noted here that this discussion would not be complete without a consideration of what is entailed by the use of the term "court" in sec. 48.19. In view of the fact that the meaning of that word is not entirely discernible from a reading of sec. 48.19 alone, it is necessary to construe sec. 48.19 in the light of those statutes which arein pari materia, i.e., dealing with the same subject matter.Weiss v. Holman (1973), 58 Wis.2d 608, 619, 207 N.W.2d 660. Such statutes must be read together and harmonized. Id. Moreover, it should be noted that the Wisconsin Supreme Court has seen fit to apply this same rule of construction to other provisions of the Children's Code. See, e.g., Jung v. State (1972), 55 Wis.2d 714,720, 201 N.W.2d 58.
In compliance with that directive, consideration must be given to sec. 48.02 (2). Section 48.02 (2) makes clear that by the use of the term "court" in sections other than secs. 48.81 to 48.97
is meant the juvenile court. It is thus certain that when sec.48.19 speaks of giving information to "the court," the legislature intended that to be the *Page 283 
juvenile court. Nor is there any other specification in the statute. A question next arises as to what constitutes the juvenile court. In the case of State ex rel. Journal Co. v.County Court (1969), 43 Wis.2d 297, 302, fn. 1, 168 N.W.2d 836, the Wisconsin Supreme Court broadly construed the term "court" to include the judge and any officers "exercising the function of the court." Thus, while the terms juvenile court and juvenile court judge may be used interchangeably, it is clear that the judge must be acting in his official capacity when he constitutes "the court." As was aptly stated by the Supreme Court of Illinois:
 ". . . courts are political agents established under the Constitution, and, in contemplation of law, have separate existence distinct from the judges who preside over them; . . . a judge has no judicial power outside of the court in which he officiates, and when discharging the functions of his office he is the court in concrete form, and in this sense is often called the `court' . . ." Hartshorn, et al. v. Illinois Valley Ry. Co. (1905), 216 Ill. 392, 75 N.E. 122, 126.
 The third and final requirement is that the information itself must tend to show that a child is delinquent, in need of supervision, neglected or dependent as those terms are defined in secs. 48.12 and 48.13, respectively. These three are the only requirements mandated by sec. 48.19, and whenever these are present, a prepetition investigation is authorized. Moreover, in view of the fact that this initial referral or "complaint" as you describe it does not constitute a petition by which the juvenile court obtains jurisdiction over the child who is allegedly delinquent, dependent, neglected or in need of supervision, the requirements of probable cause do not attach.
 One final question implicitly raised by your inquiry is whether the method provided by sec. 48.19 is the only method by which a pre-petition investigation may be authorized or whether sec. 48.08 (1) empowers the juvenile court judge to order a prepetition investigation under any circumstances at his discretion. In my opinion, sec. 48.08 (1) does not so allow. Section 48.08
(1) provides as follows:
 "Duties of person furnishing services to court. (1) It is the duty of each person appointed to furnish services to the court as *Page 284 
provided in ss. 48.06 and 48.07 to make such investigations and exercise such discretionary powers as the judge may direct, to keep a written record of such investigations and to submit a report to the judge. Such person shall keep informed concerning the conduct and condition of the child under his supervision and shall report thereon as the judge directs."
It is clear from a reading of this statute that it does not outline the powers and duties of the juvenile court judge but simply the powers and duties of those persons who are appointed to perform the investigatory and supervisory functions for the court. Even if such statute were interpreted to empower a juvenile court judge to order investigations at his discretion for some other purpose, however, it is equally clear that theonly method by which a pre-petition investigation is authorized under sec. 48.19 is the method specifically provided therein and outlined above. To this end, the maxim of construction expressiounius est exclusio alterius is determinative as applied by the Wisconsin Supreme Court in the recent case of State ex rel. JerryHarris v. Richard Larson, et al., decided June 28, 1974:
 "Chapter 48, Stats., the Children's Code, is a comprehensive legislative plan for dealing with children in need of supervision and neglected, dependent, and delinquent children. It is a chapter of carefully spelled out definitions and enumerated powers. Court jurisdiction is spelled out in great detail in sec. 48.12 ff. Procedures are carefully detailed. . . .
 "The chapter reflects the legislature's desire to specifically define the authority of appropriate officers. Where there is evidence of such enumeration, it is in accordance with accepted principles of statutory construction to apply the maxim, expressio unius est exclusio alterius; in short, if the legislature did not specifically confer a power, it is evidence of legislative intent not to permit the exercise of the power." (Emphasis added.) Harris, supra, at pp. 5-6 of slip opinion.
In summary then, as long as the information is directed by a person to the juvenile court, which includes the juvenile court judge acting in his official capacity, and that information tends to show that a juvenile falls within the purview of sec. 48.12 or48.13, a prepetition investigation is authorized. There are no additional statutory *Page 285 
requirements, nor may such investigation be commenced by any other method.
RWW:CMW