STATE OF NEBRASKA, APPELLANT, v. EDWARD MARION CIALKOWSKI, ALSO KNOWN AS EDWARD MARION HALL, APPELLEE.

227 N. W. 2d 406

Filed March 27, 1975. No. 39691.

Raymond Baker and Douglas R. Milbourn, for appellant.

William G. Line of Kerrigan, Line, Martin & Hanson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

NEWTON, J.

Defendant was charged with contributing to the delinquency of two minor girls. He persuaded them to enter a dancing contest in a place akin to a roadhouse and during the dances to bare breasts and/or buttocks. Following conviction, a motion for new trial was sustained and the case dismissed on the ground that the statutes violated were void because they were vague and indefinite. We reverse the judgment of the District Court.

Section 28-477, R. S. Supp., 1974, provides: "Any person who by any act, encourages, causes, or contributes to the delinquency, neglect, or need for special supervision, of a child under eighteen years of age, so that such child becomes, or will tend to become, a delinquent or neglected child, or a child in need of special supervision as defined by section 43-201, shall be deemed guilty of a misdemeanor." Section 43-201, R. R. S. 1943, provided: "(5) A child in need of special supervision shall mean any child under the age of eighteen years * * * (c) who deports himself so as to injure or endanger seriously the morals or health of himself or others; * * *."

These statutes are intended for the protection of children. Being children they are not yet capable of mature judgment and require the protection of society.

It is true that the terms of the statutes are somewhat broad, yet it is practically impossible to draw them with greater specificity and still adequately protect the young. The ways in which a child may be influenced to become delinquent or immoral are multitudinous and often difficult to anticipate. In Commonwealth v. Randall, 183 Pa. Super. 603, 133 A. 2d 276, may be found appropriate language. "The comprehensive words of the statute, 'Whoever, being of the age of twenty-one years and upwards, by any act corrupts or tends to corrupt the morals of any child under the age of eighteen years' certainly convey concrete impressions to the ordinary person. The common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.

"It is obvious that the mandates of the statute are salutary measures designed to protect children. 'The ways and means by which the venal mind may corrupt and debauch the youth of our land, both male and female, are so multitudinous that to compel a complete enumeration in any statute designed for protection of the young before giving it validity would be to confess the inability of modern society to cope with the problem of juvenile delinquency.' * * *

"The highest court in the land has recognized that the 'Use of common experience as a glossary is necessary to meet the practical demands of legislation' and that the 'requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.' Sproles v. Binford, 286 U. S. 374, 393, 52 S. Ct. 581, 587, 76 L. Ed. 1167."

Statutes practically identical with ours were upheld against similar attacks in Brockmueller v. State, 86 Ariz. 82, 340 P. 2d 992; State v. McKinley, 53 N. M. 106, 202 P. 2d 964; Jung v. State, 55 Wis. 2d 714, 201 N. W.

2d 58. In numerous instances statutes which simply forbid acts tending to cause child delinquency have been upheld as sufficiently specific. See, State v. Coterel, 97 Ohio App. 48, 123 N. E. 2d 438; State v. Sparrow, 276 N. C. 499, 173 S. E. 2d 897, which states: "Even so, impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides an adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met. United States v. Petrillo, 332 U. S. 1, 91 L. ed. 1877, 67 S. Ct. 1538."; McDonald v. Kentucky (Ky. App.), 331 S. W. 2d 716; State v. Barone (Fla.), 124 So. 2d 490; State v. Montalbo, 33 N. J. Super. 462, 110 A. 2d 572; and People v. Bergerson, 17 N. Y. 2d 398, 271 N. Y. Supp. 236, 218 N. E. 2d 288, wherein it is stated: "The test to be applied was recently stated by this court: 'The test is whether a reasonable man subject to the statute would be informed of the nature of the offense prohibited and what is required of him. Such warning must be unequivocal but this requirement does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.' "

We are unable to agree that the statutes are unconstitutional. See State v. Simants, 182 Neb. 491, 155 N. W. 2d 788. The judgment of the District Court is reversed and the cause remanded.

REVERSED AND REMANDED.

McCOWN, J., dissenting.

The memorandum opinion of the District Court states that "The State did not maintain in County Court or on appeal that the defendant was guilty of such conduct as would tend to encourage a child to commit a crime. * * * Counsel have failed to point out to me any criminal activity the child would have engaged in and they concede there was none." The opinion also states

that the statutes involved are subsections (3) (e) and (5) (c) of section 43-201, R. R. S. 1943. Subsection (3) (e) defines a neglected child as one "who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such child;". Subsection (5) (c) defines a child in need of special supervision as one "who deports himself so as to injure or endanger seriously the morals or health of himself or others;".

No question of health is involved and the statutes must be interpreted and applied to acts which are not criminal under any other law of the state or any city or village ordinance. The acts here can only be said to be criminal because they are either injurious to the morals of the child involved or injure or endanger seriously the morals of the child or others. Only concepts of morality are involved, and the statutes apply them to completely undefined and unspecified acts and conduct.

The District Court relied upon the authority of Gesicki v. Oswald, 336 F. Supp. 371 (So. Dist. N. Y., 1971), affirmed 406 U. S. 913, 92 S. Ct. 1773, 32 L. Ed. 2d 113 (1972). In that case the New York "wayward minor" law was involved. The particular language defined a wayward minor as one who "is morally depraved or is in danger of becoming morally depraved." Judge Kaufman, speaking for a three-judge federal court, found the statute unconstitutional for vagueness. Quotation from that opinion is appropriate here. The court said: "It is clear to us that the terms 'morally depraved' and 'in danger of becoming morally depraved' fall far beyond the bounds of permissible ambiguity in a standard defining a criminal act. Indeed, a penal statute purporting to outlaw 'evil,' as these criteria essentially do, is a paradigm of a statute 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' Connally v. General Constr. Co., 269 U. S. 385, 391, 46 S. Ct. 126, 127, 70 L. Ed.

322 (1926). The concept of morality has occupied men of extraordinary intelligence for centuries, without notable progress (among even philosophers and theologians) toward a common understanding. * * *."

The court in Gesicki quoted from Musser v. Utah, 333 U. S. 95, 68 S. Ct. 397, 92 L. Ed. 562. In that case the defendants had been charged under a Utah statute which made it a crime to conspire to commit any act "injurious to public morals." In construing that phrase, Mr. Justice Jackson, speaking for the Supreme Court, said: "Standing by itself, it would seem to be warrant for conviction for agreement to do almost any act which a judge and jury might find at the moment contrary to his or its notions of what was good for health, morals, trade, commerce, justice or order. In some States the phrase 'injurious to public morals' would be likely to punish acts which it would not punish in others because of the varying policies on such matters as use of cigarettes or liquor and the permissibility of gambling. This led to the inquiry as to whether the statute attempts to cover so much that it effectively covers nothing. Statutes defining crimes may fail of their purpose if they do not provide some reasonable standards of guilt. See, for example, United States v. Cohen Grocery Co., 255 U. S. 81. Legislation may run afoul of the Due Process Clause because it fails to give adequate guidance to those who would be law-abiding, to advise defendants of the nature of the offense with which they are charged, or to guide courts in trying those who are accused."

In 1974, the West Virginia Supreme Court of Appeals held a West Virginia statute unconstitutional which had a provision almost identical to the Nebraska statute. The particular language involved in the West Virginia statute was: "Deports himself so as to wilfully injure or endanger the morals or health of himself or others." The court said: "We might, under the mandate to construe a statute to be constitutional, if possi-

ble, superimpose on subsections 7 and 9 of Code, 49-1-4, standards of reasonable certainty by judicial interpretation. However, the language of subsection 7, 'immoral or vicious persons', is so broad and subjective in nature that there is an inherent danger that a trial court could not keep purely subjective standards out of the consideration of juries. Likewise, the language of subsection 9, 'injure or endanger the morals or health of himself or others', is so utterly subjective that an attempt to make it certain would strain the interpretative process." State v. Flinn, 208 S. E. 2d 538 (W. Va. App., 1974).

The cases cited in the majority opinion in support of the conclusion that statutes similar to ours are constitutional, with only one exception, involved conduct which was clearly illegal and criminal under specific state statutes. It should be noted too that they are largely older cases, and all but one of them are long before the Supreme Court's affirmance in the Gesicki case.

For a period of over 70 years this court has consistently followed the rule stated in State v. De Wolfe, 67 Neb. 321, 93 N. W. 746: "In this state all public offenses are statutory; no act is criminal unless the legislature has in express terms declared it to be so; and no person can be punished for any act or omission which is not made penal by the plain import of the written law."

Time after time this court has struck down statutes as unconstitutional because of indefiniteness. In State v. Adams, 180 Neb. 542, 143 N. W. 2d 920, this court said: "It is a fundamental requirement of due process of law that a criminal statute be reasonably clear and definite. * * * A crime must be defined with sufficient definiteness and there must be ascertainable standards of guilt to inform those subject thereto as to what conduct will render them liable to punishment thereunder. The dividing line between what is lawful and

unlawful cannot be left to conjecture. * * * A statute which forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning, and differ as to its application, violates the first essential of due process of law." See, also, Heywood v. Brainard, 181 Neb. 294, 147 N. W. 2d 772.

It is indisputable that a legislature can draw statutes defining the crime of contributing to the delinquency of a minor with sufficient specificity to pass constitutional muster before any court. In the face of that fact, it is wholly unrealistic to hold, as this court now does, that any unspecified conduct becomes criminal simply because it offends the sense of decency, propriety, and morality of any particular jury or judge. That conclusion discards a consistent rule of the criminal law of this state for almost 100 years. It does so on the assumption that all persons agree on what conduct is immoral and what conduct is not, and that no citizen needs to be told what conduct will make him not only a sinner but also a criminal. Neither justice nor morality support that result.

The District Court thoroughly analyzed the issues and the determination reached was correct in all respects. The overwhelming weight of current legal authority, as well as the controlling voice of the United States Supreme Court, require that the judgment of the District Court should be affirmed.