666 F.2d 373
 27 Fair Empl.Prac.Cas. 1481,
27 Empl. Prac. Dec. P 32,396,
3 Employee Benefits Ca 1076
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
COUNTY OF SANTA BARBARA, Defendant-Appellee.
 No. 80-5443.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 8, 1981.
Decided Jan. 22, 1982.
 
 Warren Duplinsky, E.E.O.C., Washington, D. C., for plaintiff-appellant.
 William R. Allen, Santa Barbara, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before TANG and BOOCHEVER, Circuit Judges, and NIELSEN,* District Judge.
 BOOCHEVER, Circuit Judge:
 
 
 1
 This is an appeal from the grant of summary judgment to the employer in an age discrimination case. We reverse because no evidence was presented to indicate that age is a bona fide occupational qualification (BFOQ) for the correction officers involved or that the officers were terminated in accordance with the terms of a bona fide seniority plan.
 
 
 2
 * FACTS
 
 
 3
 The county employed Gerald Robinson and John Van Gordon as correction officers[1] from November, 1973 through June, 1975, and from January, 1974 through October, 1975, respectively. Robinson was fifty-eight years old when hired, and Van Gordon was fifty-six. Both men were required by the county to retire at the age of sixty solely because of their age.[2]
 
 
 4
 In January, 1944, the county accepted the County Employees Retirement Act of 1937, Cal.Gov't Code § 31450 et seq. (Deering). Pursuant to this Act the county provides its employees with two retirement plans: the Safety Member Plan and the General Member Plan.
 
 
 5
 The Safety Member Plan covers law enforcement and fire suppression employees hired before the age of thirty-five.[3] Id. at § 31558. The county has designated correction officers as law enforcement personnel and included them in the Safety Member Plan. Beneficiaries of this plan are required to retire at the age of sixty. Id. at § 31662.6. In recognition of the early retirement, however, the county provides substantially higher benefits. Id. at 31664. All other county employees, not covered by the Safety Member Plan, are covered by the General Member Plan. Id. at § 31671. Beneficiaries of the General Member Plan are not retired until the age of seventy. Id. at § 31671. They, however, receive comparatively lower benefits than do employees covered by the Safety Member Plan. Id. at § 31676. Because Robinson and Van Gordon were both hired after the age of thirty-five they were precluded by the California statute from participating in the Safety Member Plan. They were required, nevertheless, to retire at the age of sixty as were all other law enforcement personnel.
 
 
 6
 The Equal Employment Opportunity Commission (EEOC) filed suit on their behalf alleging that their terminations violated sections 4(a)(1) and 4(e) of the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. §§ 623(a)(1) and 623(e),[4] and section 16 of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.[5] Based on the pleadings and a stipulation of facts, the district court granted the county's motion for summary judgment. The court reasoned that the county's retirement policy is exempt from the prohibitions of ADEA and that age is a bona fide occupational qualification for correction officers.
 
 
 7
 The EEOC claims on appeal that: 1) an evidentiary hearing is necessary before a court may find that age is a bona fide occupational qualification for correction officers; 2) section 4(f)(2)'s retirement plan exemption is inapplicable; and 3) the county's job announcement for the position violates the ADEA, absent proof that age is a bona fide occupational qualification.
 
 II
 ADEA's EXCEPTIONS
 
 8
 Where, as here, it is undisputed that an employee was terminated solely because of age, the burden shifts to the employer to prove that the termination falls within one of the exceptions to the ADEA's prohibitions.[6] Douglas v. Anderson, 656 F.2d 528, 531 (9th Cir. 1981); Sutton v. Atlantic Richfield Co., 646 F.2d 407, 411 (9th Cir. 1981). The employer must show either that age is a bona fide occupational qualification (BFOQ) reasonably necessary to the normal operation of the particular business, or that the termination was in compliance with the terms of a bona fide seniority plan.6aA. BFOQ Exception
 
 
 9
 (3) In deciding whether the district court erred in determining that age is a BFOQ for correction officers we face competing policy concerns. We must balance the legislative purpose "to promote employment of older persons based on their ability rather than age," 29 U.S.C. § 621(b), against the county's legitimate interest in ensuring the safety of employees, inmates and the general public.
 
 
 10
 When confronted with the same competing concerns, the Fifth Circuit ruled that the employer must establish a factual basis for its claim that age is a BFOQ reasonably necessary to the normal operations of the particular business.[7] Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224, 236 (5th Cir. 1976). In affirming the district court's holding that age is a BFOQ for intercity bus drivers, the court set forth a two-pronged test for the applicability of the BFOQ defense. According to the Tamiami court, the employer must establish that: (1) the qualification is reasonably necessary to the essence of its business; and (2) there is a factual basis for believing that all or substantially all persons over a certain age would be unable to perform the duties of the job safely and efficiently, or that it is impossible or impractical to ascertain the difference between older employees who can and cannot perform the job safely. Id. at 235-36. Accord, Arritt v. Grisell, 567 F.2d 1267, 1271 (4th Cir. 1977).
 
 
 11
 We agree with the Fifth Circuit that a factual foundation is necessary to establish that age is a BFOQ. Without the aid of factual evidence showing the impact of aging on one's ability to perform the tasks required of a correction officer we are unable to balance the competing interests here.
 
 
 12
 The district court in this case failed to require the employer to introduce any evidence. The court merely accepted a subjective assertion that older people are unable to perform adequately the tasks of the job. Such unsubstantiated assumptions are condemned by the Act, which seeks to promote employment of older persons based on their abilities rather than on their age.[8]
 
 
 13
 It is significant that Robinson and Van Gordon were satisfactorily performing their duties when they were terminated. No evidence was presented as to the general effects of aging on the performance of those duties nor as to the possibility of determining whether individual employees could be counted on to perform their duties safely. The currently available information concerning the effects of aging is not a stagnate body of knowledge. Courts should not close their doors to new knowledge by granting summary judgment on a mere assertion that a job involves the performance of arduous tasks affecting the safety of others. When safety is "the essence" of the particular business, that factor obviously becomes an important occupational consideration. Consequently, employers whose businesses are safety-related have less difficulty proving that age is a BFOQ.[9] Nevertheless, courts cannot assume, in the absence of any evidence as to its effects on safe performance, that age, per se, constitutes a BFOQ. Furthermore, when evidence is presented by the employer, the plaintiff must be given an opportunity of rebuttal.[10]
 
 B. Bona Fide Seniority Plan Exception
 
 14
 The county contends that whether or not age is considered a BFOQ in this case, Van Gordon and Robinson were retired in observance of the terms of a bona fide retirement plan. It is undisputed that prior to the 1978 amendment to the ADEA, an employer was permitted to retire employees involuntarily pursuant to a bona fide retirement plan.[11] 29 U.S.C. § 623(f)(2); United Airlines, Inc. v. McMann, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). The EEOC argues that the retirements were unlawful in this pre-amendment case because they were not made in compliance with the terms of a bona fide plan.
 
 
 15
 Although Van Gordon and Robinson were not allowed to participate in the benefits of the Safety Member Plan, they were nevertheless retired pursuant to the terms of that plan. Involuntary retirement is not exempt from the ADEA unless the plan "exists and pays benefits." McMann, 434 U.S. at 194, 98 S.Ct. at 446. Accord, Marshall v. Hawaiian Telephone Co., 575 F.2d 763, 766 (9th Cir. 1978) (defining bona fide plan as a genuine plan that pays substantial benefits); Benzel v. Valley National Bank of Arizona, 633 F.2d 1325, 1326-27 (9th Cir. 1980) (limiting the § 4(f)(2) exemption to bona fide plans that pay substantial benefits). Where the plan does not expressly provide for involuntary retirement, an employer may not rely upon the bona fide retirement plan exception. Benzel, 633 F.2d at 1327; EEOC v. Baltimore and Ohio R. Co., 632 F.2d 1107, 1111 (4th Cir. 1980); Sexton v. Beatrice Foods Co., 630 F.2d 478, 485 (7th Cir. 1980).
 
 
 16
 Van Gordon and Robinson were members of the General Member Plan and were excluded from participation in the retirement benefits available under the Safety Member Plan. The General Member Plan does not provide for involuntary retirement at the age of sixty.[12] Therefore, the terminations cannot be justified under the bona fide seniority plan exemption.[13]
 
 
 17
 To the extent that there is a conflict between California's mandatory retirement statute and the ADEA, the federal law prevails.[14] See City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 638-39, 93 S.Ct. 1854, 1862-1863, 36 L.Ed.2d 547 (1973); Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); Homemakers, Inc. of Los Angeles v. Division of Industrial Welfare, 509 F.2d 20, 22 (9th Cir. 1974), cert. denied, 423 U.S. 1063, 96 S.Ct. 803, 46 L.Ed.2d 655 (1976); Rosenfeld v. Southern Pacific Co., 444 F.2d at 1225-26.[15]
 
 III
 CONCLUSION
 
 18
 Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Heiniger v. City of Phoenix, 625 F.2d 842, 843 (9th Cir. 1980). Here an issue remains as to whether age has an adverse effect on a correction officer's ability to perform duties safely and effectively, or, in the alternative, whether it is impossible or impractical to test correction officers on an individual basis. Accordingly, the judgment below is reversed and the case remanded for proceedings on the remaining issue consistent with this opinion.[16]
 
 
 
 *
 Honorable Leland C. Nielsen, District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 Correction officers work as guards at the county jail
 
 
 [2]
 The county has re-employed both men as utility clerks
 
 
 [3]
 Correction officers work as guards at the county jail
 
 
 [4]
 Section 4(a)(1) (provides) that:
 (a) It shall be unlawful for an employer-
 (1) to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.
 29 U.S.C. § 623(a)(1).
 Section 4(e) provides that:
 It shall be unlawful for an employer ... to print or publish, or cause to be printed or published, any notice or advertisement relating to employment by such an employer ... indicating any preference, limitation, specification, or discrimination based on age.
 29 U.S.C. § 623(e).
 
 
 [5]
 An ADEA claim necessarily includes a FLSA claim. 29 U.S.C. § 626(b)
 
 
 [6]
 Sections 4(f)(1) and (2) provide that:
 It shall not be unlawful for an employer, employment agency, or labor organization-
 (1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age; (or)
 (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual ...
 29 U.S.C. §§ 623(f)(1) and (2).
 6a Congress amended section 4(f)(2) of the ADEA in 1978 to preclude the involuntary retirement of any individual on the basis of age pursuant to a bona fide seniority plan. Age Discrimination in Employment Act Amendments of 1978, Pub.L.No. 95-256, § 2(a), 92 Stat. 189. The trial court did not err in refusing to apply the amendment retroactively. EEOC v. Shell Oil Co., 637 F.2d 683, 684 (9th Cir. 1981). See also, Jensen v. Gulf Oil Refining & Marketing Co., 623 F.2d 406, 409-13 (5th Cir. 1980); Smart v. Porter Paint Co., 630 F.2d 490, 497 (7th Cir. 1980); Sikora v. American Can Co., 622 F.2d 1116, 1119-24 (3d. Cir. 1980).
 
 
 [7]
 In reaching its conclusion, the Fifth Circuit relied upon the Department of Labor's regulations concerning the enforcement of the ADEA. The Department considers the exception to be a narrow one with the burden upon the employer to establish the applicability to the particular circumstances of each case. 29 C.F.R. § 860.102 (1980). The interpretation of the enforcing agency is entitled to great deference. Griggs v. Duke Power Co., 401 U.S. 424, 433-34, 91 S.Ct. 849, 854-855, 28 L.Ed.2d 158 (1971); Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)
 
 
 [8]
 We note that the Supreme Court has ruled that mandatory retirement of state police officers does not violate equal protection. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976) (applying the rational basis test). The Court was confronted with an equal protection claim alone and did not address a statutory claim. Murgia's equal protection analysis does not control our consideration of a statutory claim under the ADEA. Congress has made a policy decision in protecting the rights of the aged. That policy may not be defeated by the deferential standard applied in an equal protection analysis. See Arritt v. Grisell, 567 F.2d at 1272 (distinguishing the equal protection claim from the statutory claim in an age discrimination case). See also Village of Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) and Griggs v. Duke Power Co., supra. Cf. Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976) (stating in dictum that the statutory and constitutional standards for adjudicating racial discrimination claims are distinct)
 
 
 [9]
 Cf. Hodgson v. Greyhound Lines, 499 F.2d 859, 863 (7th Cir. 1974), cert. denied, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975) where the Seventh Circuit held that the employer who is engaged in inherently dangerous activities, or whose business is primarily safety-related, need only show "a minimal increase in risk of harm" to establish the BFOQ defense. Even in Greyhound, however, the district court had before it empirical evidence concerning the debilitating effects of age on one's ability to drive a bus safely before concluding that age is a BFOQ for intercity bus drivers
 
 
 [10]
 Our decision in Rosenfeld v. Southern Pacific Co., 444 F.2d 1219 (9th Cir. 1971) is inapposite. In that Title VII case, we upheld the district court's summary judgment in favor of the female employee and rejected the employer's argument that he should not be denied an opportunity to present proof that sex was a BFOQ for a job requiring the lifting of heavy boxes. In the instant case we hold that an employer must tender proof that age is a BFOQ. Our holding does not address the issue of when a court may refuse to allow an employer to present that proof. We hold only that where, as here, the employer merely asserts that the job involves safety considerations summary judgment is inappropriate
 
 
 [11]
 See note 6a, supra
 
 
 [12]
 General Plan members are retired at age seventy. Cal.Gov't Code § 31671 (Deering)
 
 
 [13]
 The district court failed to address the question of what constitutes a bona fide plan. Instead, it agreed with the county's argument that involuntary retirement pursuant to a bona fide plan in effect prior to the enactment of the ADEA cannot be treated as a subterfuge to evade the purposes of the Act. We agree that where an employer has a bona fide plan in existence prior to the enactment of the ADEA, involuntary retirement pursuant to that plan cannot be deemed a subterfuge. United Airlines, Inc. v. McMann, 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977); Minton v. Whirlpool Corp., 569 F.2d 1012 (7th Cir. 1978); Thompson v. Chrysler Corp., 569 F.2d 989, 992 (6th Cir. 1978). Where, as here, however, the bona fide nature of the plan is in dispute the argument fails
 
 
 [14]
 The California statute remains valid insofar as it relates to employees covered by the Safety Member Plan who were hired prior to the 1978 amendments. See note 6, supra. It remains valid insofar as it precludes participation in the Safety Member Plan by employees hired after the age of thirty-five. The Supreme Court has specifically approved the exclusion of employees hired at an older age from benefits of an existing retirement plan. United Airlines, Inc. v. McMann, 434 U.S. at 200, 98 S.Ct. at 449. See also, Hodgson v. American Hardware Mutual Insurance Co., 329 F.Supp. 225, 229 (D.Minn.1971)
 
 
 [15]
 But see, EEOC v. City of Janesville, 630 F.2d 1254, 1258-59 (7th Cir. 1980) (stating in dictum that the city's submission of reports evidencing the Wisconsin Legislature's judgment that age is a BFOQ for the entire class of protective service jobs may be enough to establish a BFOQ defense)
 
 
 [16]
 We need not address the EEOC's third contention that the county's job announcement stating age limits of 18 to 59 for the position of correction officer violates § 4(c) of the ADEA. Whether the job announcement violates the Act depends upon whether the county may mandatorily retire correction officers at the age of sixty. Because we have decided that the bona fide retirement plan exemption is inapplicable to this case, the issue of whether the county's advertisement violates the Act is wholly dependent upon whether age is a BFOQ for correction officers