Lorraine AMATO, et al., Plaintiffs,

v.

The COUNTY OF SUFFOLK, et al., Defendants.

No. CV 87–2196.

United States District Court, E.D. New York.

Sept. 10, 1987.

Hunton & Williams by David R. Davies, New York City, David E. Nagle, Richmond, Va., for plaintiffs.

Martin Bradley Ashare, Suffolk Co. Atty. by Edith C. Rysdyk, Hauppauge, N.Y., for defendants.

WEXLER, District Judge.

On December 23, 1986, the Suffolk County Legislature adopted Local Law No. 4–1987, designated the Teenager Protection Act of 1986 ("the Law"), which prohibited

the administration of certain polygraph examinations to minors. The Suffolk County Executive approved the Law on January 22, 1987, and it was scheduled to take effect on July 1, 1987. On June 30, 1987, plaintiffs Lorraine Amato, Joseph Hofmann, Newmark & Lewis, Inc., James Mongan, and Suffolk County Polygraph Association, Inc. ("the Association") filed a complaint seeking both declaratory and permanent injunctive relief and an order to show cause seeking that defendants Suffolk County, Suffolk County District Attorney Patrick Henry, and Suffolk County Department of Consumer Affairs Commissioner Harold J. Withers be preliminarily enjoined from implementing and enforcing the Law. After an adjournment of the hearing upon defendants' order to show cause, the parties requested at a conference before the Court that the Court dispense with a definitive ruling upon plaintiffs' application for preliminary relief and instead turn its attention directly to the ultimate merits of plaintiffs' action. The Court indicated that it would comply with the parties' request, and defendants agreed not to enforce the Law pending the Court's final decision on the merits. Upon consideration of the papers the parties have filed in support of their respective positions, the arguments they have put forth at the various conferences with the Court, and the Court's own independent research of relevant case law, the Court now finds, for the reasons set forth below, that plaintiffs' complaint must be dismissed.

## I.

Local Law No. 4–1987 stems from the Suffolk County Legislature's perception that the existing state of the law fails adequately to protect minors seeking employment from potential abuses in the administration of polygraph examinations. As § 1 of the Law makes clear, the Legislature is of the opinion that, because of their inexperience and youth, minors are particularly susceptible to abusive polygraph examinations, and that polygraph examinations "intimidate, degrade, coerce, frighten and violate the privacy of minors who are subjected to such examinations as a condition of employment or during the course of their employment." Local Law No. 4–1987, § 1. The Law attempts to protect minors by prohibiting the performance of any polygraph examinations "by a polygraph examiner within the County of Suffolk by or on behalf of any public or private employer located and/or doing business within the County of Suffolk for employment purposes upon an applicant or an employee either as a condition of employment or as a condition of continued employment." *Id.*, § 3. The Law defines "applicant" as "a minor offering services for compensation to any public or private employer located and/or doing business within the County of Suffolk," and "employee" as "a minor rendering services for compensation" to any such employer. A "minor" is declared to be "an unemancipated individual under the age of twenty-one (21) years old." *Id.*, § 2.

Violation of the Law constitutes a misdemeanor punishable by a fine of up to $500.00 or imprisonment for up to one year, or both. Additionally, the Law directs the Commissioner of the Suffolk County Department of Consumer Affairs immediately to withdraw the registration and license of any polygraph examiner convicted of violating the Law. *Id.*, § 4. The Law's prohibitions and penalties, however, do not apply to polygraph examinations conducted in the course of a criminal investigation, administered to persons seeking employment as Suffolk County, town, or village police officers or as deputy sheriffs or correction officers, or performed by a federal agency or department for national security reasons as established by federal statute or executive order of the President of the United States. *Id.*, § 6.

The individual plaintiffs named in the complaint filed in this action claim that the Law subjects them to varying forms of harm. Amato is a nineteen year old who alleges that she is being harmed by the Law because she will not be able to meet her employer's polygraph requirements, which are a prerequisite to advancement and reassignment, as well as a condition of employment. Hofmann is a fifty two year

old who asserts that he is being subjected to discriminatory conditions of employment that younger people do not have to face. Newmark & Lewis, a company that has a polygraph program, states that the Law presents it with the choice of either discriminating or abandoning its lawful polygraph system. James Mongan is a polygraph examiner who alleges that the Law threatens him with criminal prosecution, imprisonment, fines, and loss of his license. The Association is an association of polygraph examiners, some of whom are themselves employers, that argues that its members are, like Mongan, being threatened with criminal prosecution and sanctions and loss of licenses.

The complaint itself contains eight counts, each setting forth ways in which the Law purportedly aggrieves certain of the individual plaintiffs. In Count I, Hofmann, Newmark & Lewis, and the Association assert that the Law violates the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, in that it grants an exemption to a younger age group that is not available to older workers. In Count II, Hofmann, Newmark & Lewis, and the Association allege that the ADEA preempts the Law. Count III claims on behalf of Amato, Hofmann, Newmark & Lewis, and the Association that the Law runs afoul of the New York Human Rights Law's prohibition against discrimination in employment of individuals age eighteen and over. N.Y.Exec.Law §§ 290–301. Count IV states on behalf of these same plaintiffs that the effect of the New York Human Rights Law is to preempt the Law.

Counts V–VIII relate solely to claims of Mongan and the Association. In Count V, Mongan and the Association allege that the Law is void for vagueness under the Fourteenth Amendment to the United States Constitution because of certain language discrepancies between §§ 1 and 3 of the Law. Count VI sets forth an equivalent claim under Article 1, § 6 of the New York constitution, which contains the state constitution's due process provision. In Count VII, Mongan and the Association assert that the Law is also violative of the Four-

teenth Amendment as unreasonable, arbitrary, and capricious because it only proscribes polygraph examiners' conduct even though it is employers who set the conditions of employment, it protects only minors, and it excepts various police- and other governmentally-related tests from coverage. Count VIII is a parallel claim brought under the New York constitution.

## II.

The Court will first address Mongan and the Association's claims in Counts V and VII that the Law violates the due process clause of the Fourteenth Amendment, since these contentions can quite readily be seen to lack merit. In Count V, Mongan and the Association assert that the Law is unduly vague because of an apparent inconsistency between the language used in §§ 1 and 3 of the Law. § 1, entitled "Legislative Intent," states, in relevant part:

[T]he purpose of this legislation is to protect . . . . minors by imposing a ban on the use of [polygraph] examinations within the County of Suffolk on individuals under the age of twenty-one (21) by any public or private employer for any employment purposes, except in instances of criminal law enforcement, pre-employment screening by the Suffolk County Police Department, or when such examination is conducted by a federal agency or department for reasons of national security as established by federal statute and/or executive order of the President of the United States.

§ 3, as the Court indicated above, *supra* p. 3, reads:

No polygraph examination shall be performed by a polygraph examiner within the County of Suffolk by or on behalf of any public or private employer located and/or doing business within the County of Suffolk for employment purposes upon an applicant or an employee either as a condition of employment or as a condition of continued employment.

Plaintiffs argue that the Law should be struck down as void for vagueness because it is unclear whether the Law prohibits the

administering of polygraph examinations to minors "for any employment purposes," the phrase used in § 1, or only the performance of such tests "as a condition of employment .... [or] continued employment," the language set forth in § 3.

■ The Supreme Court has established two basic factors that a court must consider in adjudicating challenges to statutes or ordinances on vagueness grounds. First, the court must determine whether the law at issue is sufficiently definite that it gives a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Second, the Court must ascertain whether the law provides standards that are adequately explicit to prevent arbitrary and discriminatory enforcement by those charged with the task of applying the law. *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). In other words, in order to satisfy the requirements of the due process doctrine of vagueness, a law must give fair notice and warning of the scope of its prohibitions or commands and must contain reasonably clear guidelines for law enforcement officials and triers of fact to follow. *Smith v. Goguen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974).

■ Even assuming that the phrases "for any employment purposes" and "as a condition of employment ... [or] continued employment" may differ in shades of meaning or potential scope, the Court finds that the possible discrepancy between the language contained in §§ 1 and 3 fails to signify unconstitutional vagueness under the standards the Supreme Court has set forth. The Law unquestionably gives reasonable notice of its prohibitions and the consequences of their violation. § 3 is labelled "Prohibition," and it rather succinctly spells out what it is that the law forbids. § 4, captioned "Penalties," states that "[f]ailure to comply with *Section 3* of this law shall constitute a misdemeanor...." (emphasis added). Furthermore, the phrase "condition of employment ... [or] continued employment," although perhaps not perfectly crystal clear, sufficiently con-

veys the idea that polygraph examinations are not to be administered to minors as a prerequisite to hiring or continued work that the danger of arbitrary and discriminatory enforcement is minimized. As the Second Circuit pointed out in *Textile Workers Pension Fund v. Standard Dye & Finishing Co., Inc.,* 725 F.2d 843, 856 (2d Cir.1984), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984):

> In reviewing vagueness challenges, courts have consistently upheld the use of phrases which on their face are not particularly descriptive. *See, e.g., United States v. National Dairy Prods. Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) ("unreasonably low prices"); *Boyce Motor Lines v. United States,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952) ("so far as practicable, and, where feasible"); *Old Dearborn Distrib. Co. v. Seagram Distillers Corp.,* 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109 (1936) ("fair and open competition"); *Sproles v. Binford,* 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167 (1932) ("shortest practicable route"); *diLeo v. Greenfield,* 541 F.2d 949 (2d Cir.1976) ("other due and sufficient cause"); *Brennan v. Occupational Safety & Health Review Comm'n.,* 505 F.2d 869 (10th Cir.1974) ("near proximity").

At most, the difference in the words used in §§ 1 and 3 of the Law indicates not any constitutional infirmity but only that the actual prohibitions and penalties put into place by the Law in §§ 3 and 4 may fail fully to achieve the conceivably broader goals of the legislation as stated in § 1.

■ In Count VII, Mongan and the Association allege that the Law must be struck down under the Fourteenth Amendment because it is unreasonable, arbitrary, and capricious in three separate respects. First, these plaintiffs contend, the Law improperly subjects only polygraph examiners, not employers, to criminal sanctions, even though it is employers, not polygraph examiners, who set the conditions of employment. Even assuming, *arguendo,* that plaintiffs' narrow reading of the Law's prohibitions is correct, the Court does not find this limitation of the Law's coverage to be

unreasonable. The Suffolk County Legislature enacted the Law in reaction to its perception that minors are particularly vulnerable to abusive polygraph examinations. Given this constitutionally legitimate motivation on the part of the Legislature, the restriction of the Law's prohibitions and penalties to those who actually administer the potentially abusive examinations cannot be said to be unreasonable or arbitrary.

▆▆ Second, Mongan and the Association argue that the Law is somehow violative of the Fourteenth Amendment's due process clause in that it bars the administration of polygraph examinations to minors despite Suffolk County's having recognized the legitimate business interests of employers in having such examinations performed upon applicants and employees age twenty one and older. The government, however, unquestionably possesses the constitutional power to treat minors differently from other members of society and at times act so as to shield minors from activities that have the potential to cause them more harm than older, more experienced persons. *See, e.g., Ginsberg v. State of New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).

▆▆ Third, Mongan and the Association take the position that the Law unreasonably, arbitrarily, and capriciously exempts from its coverage polygraph examinations performed as part of criminal investigations, administered to applicants for certain government positions, or conducted by a federal agency or department for national security reasons. Contrary to plaintiffs' claims, however, these exemptions, far from being irrational, reflect the Legislature's considered judgment that in given situations certain governmental interests outweigh the need for added protection against abusive polygraph examinations of minors.

Accordingly, the Court holds that the Law does not violate the due process clause of the Fourteenth Amendment to the United States Constitution.

## III.

Hofmann, Newmark & Lewis, and the Association's claims under the ADEA present a slightly thornier problem than do Mongan and the Association's assertions that the Law violates the Fourteenth Amendment. Congress enacted the ADEA in 1967 as an effort "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employees and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). Among other things, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The ADEA empowers the Equal Employment Opportunity Commission ("EEOC") to institute actions to enforce the provisions of the statute after unsuccessful attempts to eliminate allegedly discriminatory practices and to effect voluntary compliance with the ADEA's requirements through informal methods of conciliation, conference, and persuasion. 29 U.S.C. § 626(b). The ADEA also confers upon "any person aggrieved" the right to bring a private civil action under the act. However, an individual may not commence such a private action until sixty days after a charge alleging unlawful discrimination has been filed with the EEOC, and the statute limits the force of its prohibitions so as to protect only persons who are at least forty years of age. 29 U.S.C. §§ 626(c), (d), 631.

Hofmann, Newmark & Lewis, and the Association contend that the Law is in direct conflict with and preempted by the ADEA in that it requires employers who wish to utilize polygraph examinations to make age-based distinctions that the federal statute forbids. Hofmann argues that if his employer modifies its polygraph testing requirement so as to conform with the Law, Hofmann will be confronted with a situation in which he will have to undergo examinations as a condition of employment

that younger employees will not have to take. Newmark & Lewis and the Association (on behalf of its employer members) assert that, in order to comply with the Law, employers will either have to administer their polygraph examination programs in manners that offend the ADEA or discontinue their otherwise lawful requirements that employees submit to polygraph examinations at certain times. These plaintiffs therefore wish that the Court enter an order declaring the Law to be in violation of the ADEA and enjoining its enforcement.

■ The Court recognizes the bind in which these plaintiffs, particularly Newmark & Lewis and the Association, find themselves. The ADEA and the Law do indeed, at least at first blush, appear to mandate inconsistent actions by employers who wish to utilize polygraph examinations. The Court can well see why employers caught in the dilemma posed by the possibly contrary commands of the two laws would turn to the federal court system for a judicial determination of the Suffolk County law's validity rather than abandon their employment practices or flout the requirements of one of the laws in the name of compliance with the other.[1] Nevertheless, the Court is constrained by the Second Circuit's decision in *Air Line Pilots Association, International v. Trans World Airlines, Inc.*, 713 F.2d 940 (2d Cir. 1983), *affirmed in part and reversed in part on other grounds*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (hereinafter *"Air Line Pilots"*), to hold that it lacks subject matter jurisdiction over the counts in plaintiffs' complaint that challenge the Law in light of the ADEA.

*Air Line Pilots* arose out of an announcement by Trans World Airlines, Inc. ("TWA") on August 10, 1978, that, in an attempt to conform to the 1978 amendments to the ADEA, it would no longer require flight engineers to retire from that position upon reaching age sixty. Immediately upon TWA's announcement, the Air Line Pilots Association ("ALPA"), the collective bargaining representative for airline pilots and flight engineers, filed a lawsuit in the Southern District of New York alleging that TWA's new policy constituted a unilateral change that violated ALPA's rights under the Railway Labor Act, 45 U.S.C. § 156, to bargain with respect to all changes in working conditions and seeking a declaratory judgment that the ADEA did not require TWA's change in policy. The case was assigned to Judge Kevin Thomas Duffy who, in December, 1978, allowed two former commercial pilots employed by TWA to intervene as defendants in the action. The intervenors then moved for dismissal of one of ALPA's causes of action, arguing, *inter alia*, that the issuance of the declaratory judgment ALPA sought would undermine the statutory procedure for adjudicating ADEA claims.

In an opinion handed down November 17, 1980, Judge Duffy denied the intervenors' motion. *Air Line Pilots Association, International v. Trans World Airlines, Inc.*, 506 F.Supp. 234 (S.D.N.Y.1980). On the issue of whether granting ALPA the relief it desired would frustrate the procedures the ADEA established, Judge Duffy expressed his view that the intervenors' concern was misplaced. The Judge stated:

> The statutory procedure referred to by intervenors relates to individuals who have allegedly been discriminated against under the ADEA. ALPA is not

---

1. It may be worthy of note in this context that an employer may not justifiably rely upon state or local law as a defense to an ADEA claim. The regulations the EEOC has promulgated pursuant to 29 U.S.C. § 628 include 29 C.F.R. § 1625.6(c), which states:

> Many State and local governments have enacted laws or administrative regulations which limit employment opportunities based on age. Unless these laws meet the standards for the establishment of a valid bona fide occupational qualification under [29 U.S.C.

§ 623(6)(1) ], they will be considered in conflict with and effectively superceded by the ADEA.

*See also e.g., Equal Employment Opportunity Commission v. County of Allegheny*, 705 F.2d 679, 682 (3d Cir.1983); *Equal Employment Opportunity Commission v. County of Santa Barbara*, 666 F.2d 373, 378 (9th Cir.1982); *Betts v. Hamilton County Board of Mental Retardation*, 631 F.Supp. 1198, 1206 (S.D.Ohio), *appeal dismissed*, 802 F.2d 456 (6th Cir.1986); 2 H. Eglit, *Age Discrimination* § 17.15 (1986).

seeking such relief nor interfering with any individual's right to seek such relief under the ADEA. Instead, ALPA is asking for clarification of the rights and responsibilities of ALPA and TWA under the ADEA in order that other disputes between them might be settled. It is for just such a purpose that the declaratory judgment procedure exists.

506 F.Supp. at 235–36 (citation omitted).

On appeal, the Second Circuit rejected Judge Duffy's logic and conclusion, holding that, for two distinct reasons, it lacked jurisdiction to entertain ALPA's declaratory judgment action. First, the Court ruled that "the ADEA does not provide employees or labor unions with a cause of action to preempt the rights of employees by filing an anticipatory declaratory judgment action." Rather, the ADEA is designed to protect the rights of "persons aggrieved," *i.e.*, individual employees and applicants for employment who are at least forty years old.[2] *Air Line Pilots*, 713 F.2d at 950. Second, the appellate court found that ALPA's lawsuit was in effect an attempt to by-pass the statutory procedure the ADEA provides for, which is based upon the filing of an initial charge of unlawful discrimination with the EEOC and a process that begins with "conciliation, conference, and persuasion." "A potential ADEA defendant cannot be permitted to invoke the declaratory judgment procedure 'to preempt and prejudge issues that are committed for initial decision to an administrative body.'" *Id.* at 951 (citations omitted).

The Second Circuit's decision in *Air Line Pilots* was clearly motivated at least in part by its perception of the equities involved in the case. In filing its declaratory judgment action, ALPA was attempting to invoke the terms of the ADEA not "to promote employment of older persons," the expressed purpose of the statute, 29 U.S.C. § 621(b), but to *impede* such employment by obtaining a judicial determination that TWA could adhere to its former policy of requiring flight engineers to retire at age sixty. As the Court stated in the concluding paragraph of the section of its opinion addressing ALPA's action under the ADEA, "[T]he purpose and structure of the ADEA do not permit us to provide an avenue for implementing ALPA's attempt to use the Act to cut off the rights of its older members." *Air Line Pilots*, 713 F.2d at 951.

The case at bar does not entail such a conflict of interest between the declared purpose of the ADEA and the use to which a litigant wishes to put the statute's provisions. The ruling which Hofmann, Newmark & Lewis, and the Association seek from this Court is one which may well be in accord with the goals of the ADEA and, in contrast to the situation presented by *Air Line Pilots*, it surely cannot be said that these plaintiffs' cause of action is one that, if successful, would essentially allow employers to act in a discriminatory fashion. Nonetheless, whatever its motivation, the actual holding of the Second Circuit in *Air Line Pilots* is sufficiently broad that the Court is compelled to dismiss plaintiffs' claim under the ADEA on jurisdictional grounds.

Newmark & Lewis and certain members of the Association are employers who challenge the Law's validity given Congress's enactment of the ADEA and request that the Court enter declaratory and injunctive relief. The Court cannot help but conclude that *Air Line Pilots* bars Newmark & Lewis and the Association's claims as impermissible attempts by potential ADEA defendants to preempt the rights of employees through an anticipatory action seeking an adjudication of the ADEA's requirements prior to any charge being filed with the EEOC. The fact that Newmark & Lewis and the Association have requested injunctive relief as well as a declaratory judgment only strengthens the Court's conclusion. Plaintiffs' argument that their lawsuit is not an action brought pursuant to the ADEA's enforcement provisions but rather merely an application for declarato-

---

**2.** At the time the Second Circuit decided *Air Line Pilots*, the ADEA only protected persons between the ages of forty and seventy.

ry judgment concerning and injunctive relief from the Law's prohibitions is to no avail: ALPA's lawsuit too was not brought under the procedure the ADEA establishes for enforcement of its antidiscriminatory provisions and that is the precise defect to which the Second Circuit's holding in *Air Line Pilots* is directed.

Hofmann's ADEA claims similarly must fall under *Air Line Pilots*. Although Hofmann is himself an employee over the age of forty and thus potentially a "person aggrieved" with standing to file suit under the ADEA, his suit is premature and fails to comply with the procedure the ADEA sets forth for employees who believe they have been discriminated against on account of age. Plaintiffs' complaint contains nothing that indicates that Hofmann's employer has as of yet adopted a polygraph examination requirement that differentiates on the basis of age or that his employer will necessarily do so. If and when Hofmann is confronted with an employment situation that he believes is discriminatory, he can then file a charge of discrimination with the EEOC or relevant state agency. *See* 29 U.S.C. §§ 626(d), 633(b). In essence, what Hofmann is now requesting of this Court is that it rule in advance on the validity of a defense that his employer might put forth in subsequent litigation brought under the ADEA. *See Von Aulock v. Smith*, 548 F.Supp. 196 (D.D.C. 1982), *affirmed*, 720 F.2d 176 (D.C.Cir. 1983).

The Court therefore holds that the Second Circuit's decision in *Air Line Pilots* requires that it dismiss Hofmann, Newmark & Lewis, and the Association's ADEA claims for lack of subject matter jurisdiction.

## IV.

The Court having ruled that plaintiffs are not entitled under the United States Constitution or the ADEA to the relief they seek, there now remain to be considered Amato, Hofmann, Newmark & Lewis, and the Association's claims in Counts III and IV that the Law violates and is preempted by the New York Human Rights Law and Mongan and the Association's allegations in Counts VI and VIII that the Law infringes the due process guarantee of the New York constitution. The claims set forth in Counts III, IV, VI, and VIII, however, arise solely under state law. Under the rules the Supreme Court first laid down in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a federal court has the power to exercise pendent jurisdiction over state law claims which lack any independent source of federal subject matter jurisdiction so long as the federal and state claims brought in a single action "derive from a common nucleus of operative fact [and] .... are such that [a litigant] would ordinarily be expected to try them all in one judicial proceeding." 383 U.S. at 725, 86 S.Ct. at 1138. Nevertheless, the mere fact that a court may possess such power over state law claims in a given case does not necessarily require or justify its actual exercise. Pendent jurisdiction is a doctrine of discretion, not of plaintiffs' rights, and its justification "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726, 86 S.Ct. at 1139.

There would seem to be little doubt that plaintiffs' federal and state law claims in the instant case "derive from a common nucleus of operative fact," namely, the purportedly unconstitutional or statutorily impermissible effect that the Law will have on plaintiffs once it becomes effective, and that the claims are of a nature that a party would reasonably be expected to try them together. The Court therefore has the power to exercise pendent jurisdiction over the claims founded upon the Law's supposed conflict with the New York constitution and New York Human Rights Law. The Court finds, however, that the exercise

of its discretionary power of pendent jurisdiction over these claims is not warranted by the circumstances of the case. The Court deems it preferable, for reasons of both comity and New York state courts' greater familiarity with the intricacies of state constitutional and statutory law, that a state court, not a federal court utilizing its power of pendent jurisdiction, resolve an issue of first impression such as the legitimacy of a recent county enactment under New York state law.

The Court therefore declines to exercise its power of pendent jurisdiction over plaintiffs' state law claims.

## V.

For the reasons discussed throughout this opinion, the Court holds that Local Law No. 4–1987 does not violate the due process clause of the Fourteenth Amendment to the United States Constitution and that the Court lacks subject matter jurisdiction over plaintiffs' assertions regarding the Law's purported conflict with and preemption by the ADEA. The Court further holds that the exercise of its power of pendent jurisdiction over plaintiffs' state law claims is not warranted. Accordingly, the Clerk of the Court is directed to enter judgment for defendants dismissing plaintiffs' complaint.

SO ORDERED.